**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Richard P. Gielata, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| *Plaintiff*, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell, Xu Hong Bin and Heckmann Corporation, | |
| *Defendants*. | |

Plaintiff alleges as follows based upon personal knowledge as to himself and as to all other matters upon information and belief based upon the investigation made by counsel, which included *inter alia* a review of regulatory filings, press releases and other public statements and media reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**INTRODUCTION**

1. This action concerns Heckmann Corporation's ("Heckmann" or the "Company") acquisition of China Water and Drinks, Inc. ("China Water") which was completed on October 30, 2008 (the "Merger") and arises from material misstatements and omissions in the Company's joint Proxy and Information Statement/Prospectus dated October 2, 2008 (the "Joint Proxy/Prospectus") and other public statements related to the Merger and China Water.

2.     On May 20, 2008, the Company announced that it had struck a deal to acquire China Water, a Nevada corporation engaged in the manufacture and distribution of bottled water products in the People's Republic of China.

3.     The defendants solicited votes from stockholders necessary to complete the Merger by means of the Joint Proxy/Prospectus and other public statements.

4.     The Company's stockholders overwhelmingly approved the Merger at an October 30, 2008 special meeting of stockholders and the Merger was consummated that same day.

5.     The Joint Proxy/Prospectus contained material misstatements and omitted material information and did not fairly and accurately disclose the risks and liabilities that the Company and its shareholders would be assuming by acquiring China Water.  The Joint Proxy/Prospectus also misrepresented the adequacy of the due diligence defendants conducted on China Water.  Subsequent public statements by the Company similarly misrepresented and failed to disclose material facts about the Company, the Merger and China Water.

6.     This action asserts claims under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78n(a) and Rule 14a-9, 17 C.F.R § 240.14a-9, promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") on behalf of all persons or entities who held common stock of Heckmann Corporation on September 15, 2008 who were eligible to vote on the Merger at the Company's October 30, 2008 special meeting.  These claims seek recovery based upon the defendants' negligence and do not sound in fraud.

7. This action also asserts separate claims for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R § 240.10b-5 on behalf of all purchasers of the Company's publicly traded securities between October 2, 2008 and May 8, 2009, inclusive, which claims do sound in fraud.

## JURISDICTION AND VENUE

8. This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

9. Venue in this case is proper in the District of Delaware pursuant to Section 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) and (c). Acts giving rise to the violations of law complained of herein occurred in the District of Delaware. In addition, Heckmann is incorporated in Delaware.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, the defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of national securities exchanges.

## THE PARTIES

11. Plaintiff Richard P. Gielata is a resident of Allegheny County, Pennsylvania. As set forth in the Certification attached hereto as Ex. A, Plaintiff owned Heckmann common stock as of the record date on September 15, 2008 and continued to hold these shares through the vote on October 30, 2008, and purchased Heckmann common stock during the Class Period.

12. Defendant Heckmann Corporation ("Heckmann" or the "Company") is a Delaware corporation, with its principal executive offices at 75080 Frank Sinatra Drive,

Palm Desert, California 92211.  Heckmann's common stock is listed and traded on the New York Stock Exchange under the ticker symbol "HEK."

13.     Defendant Richard J. Heckmann ("Richard Heckmann" or "Mr. Heckmann") is Heckmann's Chief Executive Officer, and Chairman, and a founder of the Company.  Mr. Heckmann is a well-known entrepreneur widely regarded as "a proven veteran in the field of mergers and acquisitions," a reputation he acquired in the role of CEO of United States Filter Corporation ("U.S. Filter") and K2 Inc.  Defendant Richard Heckmann signed the Joint Proxy/Prospectus.

14.     Defendant Lou L. Holtz ("Holtz") has served as a director of Heckmann since May 2007 and is a founder of the Company.  Holtz became a college football television analyst for ESPN in September 2005 after his retirement as the head football coach of the University of South Carolina in November 2004.

15.     Defendant James Danforth Quayle ("Quayle") has served a director of Heckmann since May 2007 and is a founder of the Company.  Mr. Quayle served as a United States Congressman and Senator from the State of Indiana and as the 44th Vice President of the United States.  Quayle is chairman of Cerberus Global Investments and a director of Aozora Bank, Tokyo, Japan.

16.     Defendant Alfred E. Osborne, Jr. ("Osborne") has served as a director since May 2007 and is a founder of the Company.  Dr. Osborne is the Senior Associate Dean at the UCLA Anderson School of Management, the faculty director of the Harold Price Center for Entrepreneurial Studies at UCLA, and director of Kaiser Aluminum, Inc., EMAK Worldwide, Inc., Wedbush, Inc., and First Pacific Advisors' Capital, Crescent and New Income Funds.

17.     Defendant Donald G. Ezzell ("Ezzell") has been Heckmann's Vice President, General Counsel, and Corporate Secretary since June 16, 2008, at the latest. Ezzell was President of Owl Creek Energy Investments, Ltd., and a founder and director of The General Counsel Group, P.C., a business law firm with offices in Los Angeles, California and Houston, Texas, and was previously Chief Operating Officer and General Counsel to Geoworks Corporation.

18.     Defendant Xu Hong Bin ("Xu") was Chief Executive Officer and President of China Water, and served as a director of the Company from October 30, 2008 until his resignation on or about March 14, 2009. Xu founded and served as Chief Executive Officer of the Taoda Group, the predecessor of China Water, from December 1995 to June 2007. Xu signed the Joint Proxy/Prospectus.

19.     The Defendants listed in paragraphs 13-18 are referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class (the "Class") consisting of: (a) all persons and entities that held Heckmann common stock as of September 15, 2008, and were entitled to vote on the Merger; and (b) all persons who purchased or otherwise acquired Heckmann securities from October 2, 2008 through May 8, 2009, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are defendants herein; any person related to any of the defendants; any firm, trust, corporation, or other entity affiliated with any of the defendants (except for those holding Heckmann common stock in solely a fiduciary capacity); the legal representatives, heirs, successors, and assigns of any excluded person; and any entity controlled by any

excluded person. Also excluded from the Class are any persons or entities that acquired their Heckmann securities during the Class Period by exchanging their China Water shares in the Merger.

21. This action is properly maintainable as a class action.

22. The members of the Class for whose benefit this action is brought are dispersed throughout the United States, and are so numerous that joinder of all class members is impracticable. According to the Company's annual report on Form 10-K filed with the SEC on March 16, 2009, there were approximately 110 million shares of Heckmann common stock outstanding. These shares are held by thousands of Heckmann stockholders who are members of the Class.

23. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class sustained damages as a result of defendants' wrongful conduct as complained of herein.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and shareholder litigation. Plaintiff has no interests that are in conflict with the interests of the Class.

25. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (a) whether the defendants violated the Exchange Act; (b) whether the members of the Class have sustained damages and, if so, what is the proper measure thereof; and (c) the appropriate relief for the wrongs complained of in this Complaint.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. As the damages suffered by many individual Class members may be small relative to the expense and burden of individual litigation, it is practically impossible for most Class members to seek individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

27. Heckmann is a holding company originally organized under the laws of the State of Delaware on May 29, 2007 as a so-called "blank check company" (also commonly known as a "special-purpose acquisition company" or "SPAC") for the purpose of "acquiring or acquiring control of one or more operating businesses through a merger, capital stock exchange, asset or stock acquisition, exchangeable share transaction or other similar business combination."

28. The Company completed its initial public offering of 54.1 million units (each consisting of one share of the Company's common stock, $0.001 par value per share and one warrant to purchase one share of common stock at $6.00 per share) at $8.00 per unit on November 16, 2007, generating gross proceeds of approximately $432.9 million dollars (the "IPO").

29. On May 20, 2008, Heckmann announced that it had signed a definitive agreement to the Merger (the "Merger Agreement") for an aggregate purchase price of approximately $625.0 million. The Merger Agreement contemplated that China Water would become a wholly-owned subsidiary of the Company and provided that China Water's founder, Xu, would continue as president of the China Water, and would become a director of Heckmann.

30.  The Merger required the affirmative vote of the holders of a majority of the shares of Heckmann Common Stock issued in the IPO to approve the issuance of Common Stock in the Merger, and to adopt an amendment to Company's certificate of incorporation to provide for the Company's perpetual existence.

31.  To obtain the stockholder votes necessary for the Merger, the defendants conducted a proxy solicitation which included the filing with the SEC, and disseminating to Heckmann's stockholders, the Joint Proxy/Prospectus on or about October 2, 2008.

32.  The Joint Proxy/Prospectus stated that:

> The Heckmann board of directors believes that the merger and the merger agreement, and related transactions, are advisable and in the best interests of Heckmann and its stockholders. Accordingly, the Heckmann board of directors has approved adoption and approval of the merger agreement and approved the merger and related transactions, and recommends that Heckmann stockholders vote "FOR" approval of the Charter Amendment Proposal, "FOR" approval of the Business Combination Proposal, and "FOR" approval of the Share Issuance Proposal.

33.  Underlying this recommendation were statements that portrayed China Water as an attractive acquisition target, including that "Heckmann believes that the merger with China Water will provide Heckmann stockholders with an opportunity to merge with, and participate in, a company with significant growth potential" and that the Board considered "[t]he information concerning China Water's historic business, financial results, and prospects, including the result of Heckmann's extensive due diligence review of China Water and its business and operations."  The Joint Proxy/Prospectus also contained detailed reported, *pro forma* and projected financial data for Heckmann and China Water.

34.     The Joint Proxy/Prospectus contained material misstatements and omitted material information necessary to allow Heckmann's shareholders to cast fully informed votes with respect to the Merger. The Joint Proxy/Prospectus portrayed China Water's assets as significantly more valuable than they were and did not accurately disclose China Water's financial condition to Heckmann shareholders.

35.     A special meeting of stockholders was held at Heckmann's headquarters on October 30, 2008 for the purposes of voting on proposals necessary to complete the Merger. In advance of the vote, the Individual Defendants failed in their duty to update and correct the material misstatements and omissions in the Joint Proxy/Prospectus. Lacking the information necessary to appreciate the impact of the Merger, the Company's shareholders overwhelmingly approved the proposals necessary for the Merger.

36.     The Company reported that shareholders who were issued common stock in the IPO voted more than 95% of their shares of common stock in favor of the Merger. On October 30, 2008, the Company consummated the Merger and China Water became a wholly-owned subsidiary of the Company.

37.     In the Company's press release issued on that date, Richard Heckmann stated:

> "We are very pleased that our stockholders have voted in favor of the merger," said Richard J. Heckmann, Chairman and CEO of Heckmann Corporation. "This transaction will give China Water the necessary capital and enhanced management resources to execute its growth plan and take the business to the next level. We continue to believe the market dynamics in China remain highly attractive, fueled by favorable demographic characteristics and the need for clean, safe drinking water. We look forward to building on China Water's well-established bottled water platform and

executing an aggressive acquisition program, in order to build this company into a leading global water enterprise."

38. On March 16, 2009, the Company announced its financial results for the fourth quarter and year ended December 31, 2008 and filed its annual report on Form 10-K with the SEC. The Company's earnings release stated:

> For the fourth quarter and full year of 2008, which includes the period from October 31, 2008 through December 31, 2008, Heckmann Corporation's net sales were $10.5 million, and the net loss was ($14.9 million), or ($0.19) per share. The Company's net loss includes $21.2 million in acquisition-related expenses. Adjusted for acquisition-related expenses, net income for 2008 was $6.3 million or $0.08 per share. There are no comparable results for the pre-acquisition period. Cash investments and cash equivalents at December 31, 2008 were $330 million.
>
> * * *
>
> Business Highlights:
>
> - Reached agreement with certain China Water shareholders to settle escrow provisions in merger agreement: Heckmann to pay $14 million for 13 million shares of its common stock and expects to acquire up to an additional 5 million shares;
>
> - Acquired more than 3 million warrants in open market transactions at an average price of $0.92 for a total consideration of $2.9 million;
>
> - Signed agreement with Coca-Cola China to build a new plant in Xi'an in 2009 to serve the Shaanxi Province;
>
> - Entered into agreements to expand its Nanning and Guangzhou facilities, and expects to complete the acquisition of Harbin Taoda Drinks, Ltd. in early April 2009;
>
> - As of December 31, 2008, Heckmann had a debt-free balance sheet and a strong cash position, with cash investments and cash equivalents of $330 million; and
>
> - Significantly strengthened operational control of China Water with the appointment of J. John Cheng as President of the Company's China Division and additional finance and accounting staff. Mr. Cheng has 20 years of experience in the food and beverage packaging industry. Mr. Cheng

>will succeed Mr. Xu Hongbin, CEO of China Water, who will retire from the company in conjunction with the settlement of the escrow.

"By virtue of the acquisition of China Water at more favorable terms, we are in the unique position to grow in the largely fragmented bottled water and beverage market in China," said Mr. Richard J. Heckmann, Chairman and CEO of Heckmann Corporation. "Operationally, we are expanding our seasoned management team at China Water, which in concert with the implementation of updated financial controls and systems, will allow us to prudently expand capacity to capture market share. Furthermore, by reducing the purchase price for China Water and our outstanding share count via the settlement of the escrow, we believe we have adjusted to the new market reality and can now use our strong balance sheet to take advantage of opportunities and increase shareholder value."

Mr. Heckmann continued, "Our acquisition of China Water mirrors recent announcements of significant investments made in China by global beverage brands. These announcements serve not only to validate the market and our strategy, but also to highlight our leadership position in the country. Our agreement to expand in Xi'an, Nanning and Guangzhou builds upon a longstanding relationship that positions us today as a key supplier of bottled water in China, and now moves us into other non-carbonated beverage production. China Water will also be the sole China-based hot fill bottler equipped with a new dual-filling technology for Coca-Cola China's new, enhanced non-carbonated beverage product. We have reached an agreement in principle to expand the use of this technology to multiple operations in the Midwest and Southwest regions of China."

Concluded Mr. Heckmann, "The economic slowdown in China affords us an opportunity to build the infrastructure necessary to underpin our future growth. In the near term, we remain focused on enhancing the management team, improving our financial controls, developing an operating team focused on organic growth and expansion and positioning China Water to take advantage of the changing markets in China. We also believe the best use of our cash is in repurchasing our stock and warrants. Longer term, as market valuations stabilize, we will have the management and financial strength with which to play a larger role in the consolidation of this fragmented market."

39. On May 8, 2009, Heckmann announced its financial results for the first fiscal quarter of 2009 and filed its quarterly report on Form 10-Q with the SEC. The Company's earnings release stated:

> For the seasonally slow first quarter of 2009, Heckmann Corporation's net sales were $7.8 million, and the net loss for the first quarter was ($186.2 million), or ($1.69) per share, which included a $184.0 million non-cash goodwill impairment charge representing management's best estimate of impairment loss associated with the China Water acquisition. The Company initiated a goodwill impairment analysis for this transaction as a result of the deterioration of China's economic conditions and the subsidiary's current operating results, and expects to finalize its goodwill impairment analysis during the third quarter of 2009. The Company also recorded a non-cash purchase accounting adjustment of approximately $100.0 million to reflect the cancellation of an additional 12.2 million shares of Company common stock previously issuable in connection with its acquisition of China Water and approximately 1.5 million warrants issuable, to former China Water management and insiders. The total shares recovered from the former management and insiders totals approximately 28.5 million shares. Excluding the goodwill impairment charge and other one-time charges, adjusted EBITDA for the first quarter of 2009 was $320,000.
>
> **Business Highlights:**
>
> - Entered into a letter of intent agreement to acquire the water infrastructure assets of Charis Partners, Greer Exploration and Silversword in Texas and Louisiana for a purchase price of approximately $36 million in cash and stock. The acquisition is expected to close before June 30, 2009.
>
> - Acquired a minority interest in Underground Solutions Inc., a California-based water infrastructure and pipeline company.
>
> - Continued to execute on business opportunities in China for bottled water and non-carbonated drink servicing:
>
> - Began renovation and installation of bottling facility in Xi'an, Shaanxi Province;
>
> - Acquired 67% of Harbin Taoda Drinks, Ltd., with the balance of transaction expected to close this year.

- Maintained a debt-free balance sheet as of March 31, 2009 with a strong cash position of approximately $300 million dollars.

Mr. Richard J. Heckmann, Chairman and CEO of Heckmann Corporation, stated, "We made great progress in accelerating our strategic investment into diversified water business interests. Globally, the increasing need for delivery and purification of fresh water is driving growth in the water industry. Water infrastructure and resources are attractive long-term business opportunities and we are putting our strong balance sheet to work in the water business. So far, our efforts have culminated in a letter of intent to purchase substantially all of the assets of three companies that operate a saltwater disposal, treatment and water pipeline transportation business in Texas and Louisiana. This business has very strong growth characteristics and with the experienced and strong management team we are acquiring, we expect to open new avenues for expansion using our balance sheet strength. We have also signed an agreement to purchase a minority stake in Underground Solutions, Inc., a fast growing water infrastructure and pipeline company located in Poway, California. Investments such as these that enable us to diversify into productive and profitable water-related businesses will be critical to the long-term success of our Company.

"China also presents a sizable and growing market, and business growth through relationships with large, wellbranded customers will continue to be a focus for us going forward. The expansion of our business with Coca-Cola China and other major beverage and servicing customers is underway. Construction at our plant facility in Xi'an, Shaanxi Province, which will service our Coca-Cola business in the region, is moving forward according to plan, and the installation of equipment begins this month. Other expansions are being negotiated as we grow our management team in China.

"China Water and Drinks' sales for the first quarter of 2009 were soft reflecting not only the seasonally slow first quarter but also the economic slowdown across most sectors in China. We also experienced collection issues and a general lack of liquidity in our non-OEM customer base. Additionally, we discovered what we believe was financial misconduct and the diversion of cash deposits by former management of China Water. We have not only removed them from the organization, but as indicated above, moved to cancel all of their shares in Heckmann Corporation and are pursuing other remedies. With the share cancellations we will have reduced our shares issued in the China Water transaction by 48% and our outstanding share count by 23% overall. Through

>these determined actions, we feel that we are in a better position than we started from which to effectively manage and grow this business, and overall, our stockholders have captured more value out of their holdings. We remain confident in the prospects for China Water to expand market share in key regions in China over both the near and long term.
>
>"Our strong balance sheet holds approximately $300.0 million dollars in invested cash. These resources allow us to be aggressive in making additional acquisitions as we identify attractive and strategic long-term opportunities for our stockholders," Mr. Heckmann concluded.

40. Following the Company's earnings release, investors reacted to these statements by pushing down the Company's stock price in active trading. Revelations in the ensuing months continued to demonstrate the incomplete and misleading information provided to stockholders concerning the Merger and China Water and demonstrate the Merger's harmful effect on the Company.

41. On November 9, 2009, the Company issued an earnings press release and filed its quarterly report on Form 10-Q for its fiscal quarter ended September 30, 2009. The 10-Q stated:

>In October 2009, the Company finalized the assumptions and calculations used in the preliminary purchase price allocation. In the process of finalizing the preliminary allocation management considered further declines in projected sales volumes and cash flow projections, a revised lower outlook for China Water operating results, and pending litigation between the Company and Xu Hong Bin . . . [and] determined that its initial purchase price allocation for certain acquired assets and assumed liabilities, were not recoverable at the date of acquisition.
>
>* * *
>
>Accordingly, the Company reduced estimated values for certain acquired assets and assumed liabilities, property plant and equipment and intangible assets, and the investment in equitee investee [sic] by, approximately $36.6 million, $25.7 million, and $9.0 million, respectively and increased goodwill. Management

> then completed the Company's second step of its goodwill impairment test, which was begun in April 2009, as disclosed in previous Form 10-Q filings.
>
> * * *
>
> Management determined that the implied fair value of goodwill was less than the carrying value of goodwill by approximately $178.5 million, which was recorded as a non-cash goodwill impairment charge in the third quarter of fiscal 2009. As of September 30, 2009, remaining goodwill of our China Water reporting unit is $6.3 million. The goodwill impairment charge was recorded in operating expenses during the third quarter of fiscal 2009.

42. In the Company's third quarter earnings press release issued on November 16, 2009, Richard Heckmann stated:

> In three quarters, we have accomplished our stated objectives to scrub financial results, improve internal controls, and prepare a sound operational structure in China and the U.S. from which to pursue growth and expansion. The stage is now set for 2010 and beyond. While 2009 has been painful and early performance at China Water has been far below what we had hoped for, we have a new management team in China, solid relationships with our customers, and several upcoming opportunities to expand and grow.

## COUNT I
### (Violation of Section 14(a) and Rule 14a-9 Against All Defendants)

43. Plaintiff repeats and realleges each and every allegation set forth above.

44. The claims set forth herein do not sound in fraud and are based on negligent conduct by the defendants named herein.

45. The defendants named herein violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder in that these defendants solicited proxies from Plaintiff and other members of the Class by means of a Proxy Statement that through defendants' negligence contained statements which, at the time and in the light of the circumstances

- 15 -

under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

46. Plaintiff and other members of the Class were misled by defendants' false and misleading statements and omissions, were denied the opportunity to make an informed decision in voting on the Merger, and approved the Merger without having been advised of material facts.  Accordingly, Plaintiff and other members of the Class did not receive their fair share of the value of the assets and business of the combined entity, suffered the dilution of their individual holdings of Heckmann stock, suffered damages when the Company's stock price decreased, and were prevented from benefiting from a value-maximizing transaction.

47. The members of the Class have suffered damages as a result of the Merger which was approved through the use of a proxy in violation of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.

## COUNT II
### (Violation of Section 10(b) and Rule 10b-5
### Against Heckmann, Richard Heckmann and Xu)

48. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-42 above.

49. The defendants named herein violated Section 10(b) and Rule 10b-5 thereunder by employing devices, schemes and artifices to defraud; making untrue statements of material facts or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaging in acts, practices and a course of business that operated as a

fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Heckmann securities during the Class Period.

50. The defendants named herein made the false and misleading statements and omissions knowingly, or in the alternative, extremely recklessly. In addition to having actual knowledge, and/or extreme reckless disregard of their fraudulent statements and conduct, each of the defendants also had a strong motive to engage in the fraudulent scheme set forth herein.

51. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Heckmann's securities was artificially inflated. Plaintiff and the Class paid such artificially inflated prices for Heckmann securities and were damaged when the price of those securities declined after the true facts concerning the Merger and China Water were revealed.

## PRAYER FOR RELIEF

**WHEREFORE**, on behalf of themselves and the Class, Plaintiffs demand judgment against defendants as follows:

    A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as a representative of the Class;

    B. Awarding Plaintiff and the Class compensatory and or recissory damages;

    C. Awarding Plaintiff his costs and disbursements, including the fees of Plaintiff's counsel and experts, and reimbursement of expenses; and

    D. Granting Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

52. Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: May 6, 2010            **ROSENTHAL, MONHAIT & GODDESS, P.A.**

/s/ P. Bradford deLeeuw
Norman M. Monhait (Del. Bar No. 1040)
P. Bradford deLeeuw (Del. Bar No. 3569)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
302.656.4433
Nmonhait@rmgglaw.com
Bdeleeuw@rmgglaw.com

*Plaintiff's Counsel*

OF COUNSEL:
**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Sharan Nirmul (Del. Bar. No. 4589)
D. Seamus Kaskela
280 King of Prussia Rd
Radnor, PA 19087
610.667.7706
snirmul@btkmc.com
skaskela@btkmc.com