**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD P. GIELATA, Individually and On: Behalf of All Other Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C. A. No. 10-378-LPS-MPT |
| | : | |
| RICHARD J. HECKMANN, LOU L. HOLTZ, : JAMES DANFORTH QUAYLE, ALFRED E. : OSBORNE, JR., DONALD G. EZZELL, XU : HONG BIN and HECKMANN CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Presently before the court is defendant Heckmann Corporation's ("Company")

motion to transfer this case from the United States District Court for the District of

Delaware to the Eastern Division of the United States District Court for the Central

District of California.  For the reasons that follow, the court recommends that

defendants' motion be denied.

### II.  BACKGROUND

**Factual Background**

The Company is a publicly traded holding company incorporated under the laws

of Delaware with its principle office located in Palm Desert, California.[1]  The Company is

in the business of acquiring or obtaining control of operating entities through various

---

[1] D.I. 1 at ¶ 12; D.I 20 at ¶ 3.

business combinations such as asset or stock acquisitions and mergers.[2]  On May 20,

2008, the Company publicized a merger agreement to acquire China Water, a Nevada-

based corporation that manufactures and distributes bottled water products in China.[3]

After soliciting stockholder votes in October 2008 through a joint Proxy/Prospectus

statement,[4] the Company secured the merger at an October 2008 special stockholder

meeting where the required majority of common shareholders approved the merger.[5]

   After the merger, the Company twice issued releases of its financial results, and

twice filed quarterly reports with the SEC,[6] all of which indicated a substantial loss in

profit.[7]  Richard J. Heckmann, the Company's Chairman and CEO, stated in the

Company's earnings releases that, *inter alia*, the Company was in a "unique position to

grow" in the bottled water industry in China[8] and had a "strong balance sheet."[9]  The

earnings releases also highlighted that the Company had a debt-free balance sheet with

a strong cash position of $330 million in the fourth quarter of 2008[10] and roughly $300

million in the first quarter of 2009.[11]  The market reacted to the earnings releases by

decreasing the price of the Company's securities.[12]

---

[2] D.I. 1 at ¶ 27.
[3] *Id.* 1 at ¶¶ 2, 29.
[4] D.I. 21 Ex. A (parts 1, 2, 3).
[5] D.I. 1 at ¶¶ 3, 4, 30, 31, 36.
[6] March 16, 2009 for the financial quarter ending on Dec. 31, 2008.  D.I.1 at ¶ 38. The second release and filing occurred on May 8, 2009, for the first financial quarter of the year 2009.  D.I. 1 at ¶ 39; D.I. 39 Ex. B.
[7] D.I. 1 at ¶¶ 38, 39.
[8] *Id.* at ¶ 38.
[9] *Id.* at ¶¶ 38, 39.
[10] *Id.* at ¶ 38.
[11] *Id.* at ¶ 39.
[12] *Id.* at ¶ 40.

### Parties' Contentions

Plaintiff Richard P. Gielata ("Gielata") is a Pennsylvania resident[13] who, between June 2, 2008 and January 26, 2009, owned and purchased 3,000 shares in the Company at various times.[14]  On May 6, 2010, Gielata filed this securities lawsuit as a class action in the District of Delaware pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) and (c), alleging that the wrongs described in the complaint occurred in Delaware and that defendants used interstate commerce to commit those wrongs.[15] Gielata seeks compensatory and recissory damages for all persons or entities holding common stock in the Company on September 15, 2008[16] and for those who were entitled to vote on the merger in October 2008.[17]  Potential class members number in the thousands and are located throughout the United States.[18]  Gielata also seeks reimbursement for his expenses and a judgment declaring that this action be maintained under Rule 23 of the Federal Rules of Civil Procedure.[19]

Gielata argues that defendants violated Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 under the same authority by negligently incorporating materially false and misleading facts and negligently omitting material facts in the Proxy/Prospectus statement[20] that were necessary to make an

---

[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 4.
[15] *Id.* at ¶¶ 8, 9.
[16] *Id.* at 17.
[17] *Id.* at ¶¶ 6, 20.
[18] *Id.* at ¶ 22.
[19] *Id.* at 17.
[20] *Id.* at ¶¶ 1, 5, 35, 45, 47.

informed decision on the proposed merger.[21]  Gielata maintains that the Company obtained approval for the merger through these misrepresentations resulting in financial losses to himself and other shareholders.[22]  He also claims that those shareholders who purchased the Company's securities between May 20, 2008 and May 8, 2009[23] sustained lost profits[24] resulting from defendants' fraud, intentional or reckless fraudulent public statements of material facts,[25] and omission of material facts[26] in violation of Section 10(b) and Rule 10b-5 of the Exchange Act.[27]

The complaint names the Company and six of its officers and directors as defendants.  On June 25, 2010, the Company moved to transfer the case to the Eastern Division of the Central District of California pursuant to 28 U.S.C. § 1404(a),[28] averring that its incorporation is the only connection to this jurisdiction and that the change of venue is justified based on convenience to the parties and witnesses.[29]  The Company maintains that:  many witnesses and documents, and most defendants, are located near the Central District of California; that public interest would be served by changing the venue, and; that a second class action has been filed against it in that district asserting the same claims raised in the present matter.[30]

---

[21] *Id.* at ¶¶ 34,46.
[22] *Id.* at ¶ 46.
[23] *Id.* at ¶¶ 7, 20.
[24] *Id.* at ¶ 51.
[25] *Id.* at ¶ 50.
[26] *Id.* at ¶ 49.
[27] *Id.* at ¶ 7.
[28] D.I. 15 at 1.
[29] D.I. 17 at 1-2.
[30] D.I. 15 at 1, D.I. 17 at 2.  The complaint for the second class action was filed on May 21, 2010.  D.I. 39 Ex. H.

4

In his opposition to the motion to transfer, Gielata contends that:  venue is proper in Delaware under 15 U.S.C. § 78aa; the Company has failed to demonstrate that its interests strongly weigh in favor of transfer; deference should be accorded to his choice of forum, and; several of the defendants are currently in litigation in the Delaware Court of Chancery involving the same facts that gave rise to the instant claims.[31]  Gielata notes that the corporate defendant:  is connected to this jurisdiction because it files corporate documents in Delaware; operates and issues stock under Delaware law, and; effectuated the merger pursuant to Delaware law.[32]  On July 23, 2010, briefing was completed on the motion to transfer.[33]

## III.  STANDARD OF REVIEW

An action may be brought in a judicial district where "any defendant resides"[34] or where "a substantial part of the events or omissions giving rise to the claim occurred."[35] A defendant corporation resides in any "district in which it is subjected to personal jurisdiction at the time the action is commenced."[36]  Cases arising out of violations of the Exchange Act may be filed in any district where "the defendant is found or is an inhabitant or transacts business."[37]  It is within the discretion of a district court to transfer any civil action to a different district where the action "might have been brought . . . for the convenience of [the] parties and witnesses, in the interest of justice."[38]  In

---

[31] D.I. 38 at 1-3.
[32] *Id.* at 5-6.
[33] *See generally* D.I. 40.
[34] 28 U.S.C. § 1391(b)(1) (2010).
[35] 28 U.S.C. § 1391(b)(2) (2010).
[36] 28 U.S.C. § 1391(c) (2010).
[37] 15 U.S.C. § 78aa (2010).
[38] 28 U.S.C. § 1404(a) (2010).

determining whether transfer is appropriate, the court must balance the private and public interest factors delineated in *Jumara v. State Farm Ins. Co.*[39]  The private interest factors include:  the plaintiff's choice of forum; the defendant's choice of forum; where the claim arose; the convenience of the parties; the convenience of the witnesses only if the witnesses are potentially unavailable for litigation in one of the preferred fora, and; the location of the books and records to the extent that these documents will not be accessible in one of the fora.[40]  The public interest factors include:  the enforceability of the judgement; the practical considerations that will conceivably make trial less difficult, time consuming and expensive; difficulties arising from court congestion in the two fora; local interest in deciding local controversies; public policies of the fora, and; judicial familiarity with the applicable state law.[41]

The moving party has the burden of proving that the action could have properly been brought in its preferred forum[42] because a plaintiff's choice of forum is given "paramount consideration"[43] and "should not lightly be disturbed."[44]  The movant "must establish that the balance of convenience of the parties and witnesses strongly favor [its]" position.[45]  It is a defendant's responsibility to prove that litigating in the plaintiff's

---

[39] 55 F.3d 873 (3d Cir. 1995).

[40] *Id.* at 879; *see also Pfizer Inc. v. Sandoz Inc.*, C.A. No. 09-742-JJF, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010) (citing *Jumara*, 55 F.3d at 879).

[41] *Pfizer Inc.*, 2010 WL 256548, at *3 (citing *Jumara*, 55 F.3d at 879-80).

[42] *Pfizer Inc.*, 2010 WL 256548, at *3 (citing *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991)).

[43] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

[44] *Pfizer Inc.*, 2010 WL 256548, at *3 (citing *Shutte*, 431 F.2d at 25).

[45] *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 329 (D. Del. 2009) (citing *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981)).

forum "would pose a unique or unusual burden on its operations";[46] mere inconvenience

to a defendant is insufficient to warrant transfer.[47]  Transfer will be denied "if the factors

are evenly balanced or weigh only slightly in favor of the transfer,"[48] or if a change in

venue merely shifts the inconvenience to the nonmovant.[49]  Absent a legitimate reason,

a defendant's burden is lessened where transfer is considered "less inconvenient to a

plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the alleged

wrongful activity occurred."[50]  A corporation's selection of its state of incorporation,

however, "is a rational and legitimate reason to choose to litigate in that state,"[51] and a

corporate defendant should not complain when an action is brought against it in the

incorporating state.[52]  "Home turf" is defined as the "forum closest to the plaintiff's

residence or principal place of business which can exercise personal jurisdiction over

---

[46] *Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F. Supp. 2d 34, 45 (D. Del. 2007) (citations omitted).

[47] *Nice Sys., Inc. v.Witness Sys., Inc.*, C.A. No. 06-311-JJF, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006) ("A transfer is not warranted 'simply because the transferee court is more convenient for defendants.'") (citing *Ballard Med. Prod. v. Concord Laboratories, Inc.*, 700 F. Supp. 796, 801 (D. Del. 1983)).

[48] *Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.*, C.A. No. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (citing *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999)).

[49] *Bergman*, 512 F. Supp. at 973 (D. Del. 1981).

[50] *Cont'l Cas. Co.*, 61 F. Supp. 2d at 131 (citing *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)).

[51] *Amgen*, 513 F. Supp. 2d at 45.

[52] *Stratos*, 2002 WL 500920, at *2 (citing *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993) ("[T]he fact that [the defendant] incorporated in Delaware should not be disregarded lightly.  By incorporating in Delaware, it can be assumed that [the defendant] desired the benefits it believed Delaware provides to chartered corporations.  [The defendant] chose Delaware as its legal home and should not now complain . . . .")).

the defendants at the time the lawsuit is filed."[53]

## IV. DISCUSSION

Although this action could have been brought in California under 28 U.S.C. §§ 1391(b)(1), (2), and (c), and 15 U.S.C. § 78aa, the private and public interest factors of 28 U.S.C. § 1404(a) do not warrant transfer.

The Company's principal place of business is located in Palm Desert, California.[54]  Three of the six individual defendants provided declarations stating that California is their primary place of residence.[55]  The principal events that provoked this action, the special shareholders' meeting that resulted in approval of the merger[56] and the misrepresentations,[57] occurred at the Company's headquarters in California.  These facts demonstrate that litigation could have been brought in California, thus meeting the requirements set forth in 28 U.S.C. §§ 1391(b)and (c), and 15 U.S.C. § 78aa.  Although this action may be maintained in California, the court must still determine, by balancing the private and public interest factors, whether transfer is in the interests of justice and convenient for the parties as required under 28 U.S.C. § 1404(a).  In balancing these factors, the court finds that the relevant interests do not weigh in favor of transfer.

### Private Interest Factors

*The Parties' Choice of Forum, Where the Claim Arose, and Convenience of the*

---

[53] *Cont'l Cas. Co.*, 61 F. Supp. 2d at 131 (citing *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197 (D. Del. 1998)).

[54] D.I. 1 at ¶ 12; D.I. 20 at ¶ 3.

[55] Defendants Donald G. Ezzell and Richard J. Heckmann reside in the Central District of California.  D.I. 19 at ¶ 3; D.I. 20 at ¶ 4.  Defendant Alfred E. Osborne, Jr. resides in Sherman Oaks, California.  D.I. 18 at ¶ 3.

[56] D.I. 1 at ¶ 35; D.I. 20 at ¶ 9; D.I. 21 Ex. A (part 3) at 129.

[57] D.I. 20 at ¶¶ 6-8.

*Parties*

Gielata maintains that his choice of forum is entitled to great deference under Third Circuit law, notwithstanding that Delaware is a forum outside his home turf.  He notes that the initial burden is on the Company to show that convenience and the interests of justice strongly favor the transfer,[58] which the Company has not met.  He contends that the Company's situs of incorporation provides a legitimate and rational basis for the matter to remain in Delaware, and the liberal venue provision in 15 U.S.C. § 78aa supports his choice of forum.[59]  The Company argues that since this action is not located within Gielata's home turf, little deference should be accorded his forum preference.[60]  Gielata's forum selection, however, remains entitled to due deference because of the Company's incorporation here.[61]  The court finds that the Company has no ground to complain about his forum preference because, by incorporating in Delaware, it chose to avail itself of the protections and benefits of Delaware law and, thereby, expose itself to litigation here.[62]

Next, Gielata argues that, in addition to the Proxy statement and SEC filings being distributed to Delaware investors, the merger that gave rise to his claims is governed by Delaware law,[63] and thus there is sufficient connection to support his

---

[58] D.I. 38 at 10.

[59] *Id.* at 11.

[60] D.I. 17 at 6; D.I. 40 at 3.

[61] D.I. 38 at 10.  *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999) (citing *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)).

[62] D.I. 38 at 12-13.  *Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.*, C.A. No. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (citing *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993)).

[63] D.I. 38 at 5-6.

9

contention that the claims arose in this jurisdiction.  The Company contrarily argues that the alleged claims arose in California because the merger was approved, and the documents were prepared at its headquarters in Palm Desert.[64]  Because both parties' contentions rest on a reasonable basis in the law to establish personal jurisdiction in either fora, the court believes this factor is neutral.

In support of its argument that California is more convenient to the parties involved, the Company points to the inconvenience for the three officers and directors who reside in California should this matter remain here, and the commercial and economic detriment incurred by having management involved in extensive litigation in a distant jurisdiction.[65]  It notes that courts give more weight to a defendant's choice of forum in securities litigation.[66]  Since Gielata must travel to litigate in whichever jurisdiction this action is maintained, the Company argues he has failed to prove that Delaware is the more convenient forum.[67]

The Company's arguments suggest mere inconvenience is sufficient to warrant a transfer.[68]  These arguments express a misunderstanding of the applicable law.  It is not Gielata's burden to prove that Delaware is a more convenient forum; it is the movant's burden, i.e. the Company's burden, to show that Delaware "would pose a unique or unusual burden on its operations,"[69] and thereby demonstrate that the factors weigh in

---

[64] D.I. 17 at 7; D.I. 40 at 5-6.
[65] D.I 17 at 7-8; D.I. 40 at 6-7.
[66] D.I. 17 at 7.
[67] D.I 17 at 8; D.I. 40 at 7.
[68] *Nice Sys., Inc. v.Witness Sys., Inc.*, C.A. No. 06-311-JJF, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006).
[69] *Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F. Supp. 2d 34, 45 (D. Del. 2007).

favor of a transfer.[70]  Three of the defendants would also have to travel to either

jurisdiction because two reside in other states and one resides in another country,[71]

making Delaware no less convenient.  That Gielata, a Pennsylvania resident, must

travel despite the forum does not imply, as the Company suggests, that his convenience

is a neutral factor.  Nonetheless, since both parties would be required to travel to the

other's chosen forum, this factor is neutral.

     *Convenience of the Witnesses*

     The Company argues that the convenience of the witnesses weighs in favor of

transfer because three of its key witnesses, the primary individuals who provided the

accounting information used in the documents at issue, are former employees who

reside in California, and thus are not subject to the subpoena power of this court.[72]  It

further notes that many of its non-party witnesses, including the Company's outside

auditor, are also located in California.[73]  In response, Gielata asserts that the

convenience of the witnesses is a neutral factor[74] and should be considered "only to the

extent that the witnesses may actually be unavailable for trial,"[75] which the Company

has failed to demonstrate.[76]

     The Company relies on *Mentor Graphics v. Quickturn Design System, Inc.*,

---

[70] *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 329 (D. Del. 2009).

[71] These three defendants reside in Arizona, Florida, and Hong Kong.  D.I. 38 at 13.

[72] D.I 17 at 9; D.I 40 at 7-8.

[73] D.I. 17 at 10; D.I. 40 at 8.

[74] D.I. 38 at 15-16 (citing *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 09-742-JJF, 2010 WL 256548, at *4 (D. Del. Jan. 20, 2010)).

[75] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

[76] D.I. 38 at 16-17.

where this court, in analyzing this factor, determined it weighed in favor of transfer.[77]  In *Mentor*, the defendant's key witnesses provided individual declarations articulating in detail the difficulties they faced litigating in the plaintiff's chosen forum.[78]  Defense counsel's declaration noted the need for testimony from six companies who had absolutely no contacts with Delaware.[79]  In finding transfer appropriate, the court relied upon the declarations and the restraints on its subpoena power over the potential witnesses.[80]  In the present matter, the Company merely asks the court to assume that certain witnesses would be unavailable for trial.  It surmises that requiring a number of its current employees to appear in Delaware would impose a significant financial burden.[81]  It fails, however, to approximate the number of employee witnesses needed for trial in Delaware or provide any evidence supporting the purported economic onus for the analysis of this factor.  Furthermore, the Company's outside auditor is incorporated in Delaware and has an office located in Philadelphia, Pennsylvania.[82]

*Location of Documents*

Lastly, the Company asserts that since all of its accounting documents are located in California, this factor, location of books and records, weighs in its favor.[83]  The *Jumara* case, however, provides that this factor is only relevant when the books and records are unavailable for trial in the nonmovant's chosen forum.[84]  While most

---

[77] 77 F. Supp. 2d 505 (D. Del. 1999).
[78] *Id.* at 510-11.
[79] *Id.* at 511.
[80] *Id.  See* FED. R. CIV. P. 45.
[81] D.I. 17 at 10; D.I. 20 at 10.
[82] D.I. 38 at 16.
[83] D.I. 17 at 10-11; D.I. 40 at 9.
[84] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

relevant documents may be located in California, they are within the possession, custody, or control of the Company, and thus not unavailable.  The Company has failed to demonstrate any difficulty in producing these material documents in Delaware, especially in light of the technologies available.

**Public Interest Factors**

The only public interest factors at issue are the practical considerations that conceivably make trial less difficult, time consuming, and expensive and the local interest in deciding local controversies.[85]  The Company propounds that trial in California would be easier, quicker and less expensive since its documents and witnesses are located in California.[86]  Additionally, the Company references a separate but similar class action suit pending in the Central District of California, and contends that transfer would prevent waste of resources and duplicative litigation.[87]  Lastly, it emphasizes that certain purportedly fraudulent conduct occurred in California and its CEO resides there, giving California local interest in deciding the dispute.[88]  Gielata responds that the Company's justifications are unpersuasive because the Company has failed to show that the witnesses and documents would be unavailable for trial in Delaware.[89]  Gielata further asserts that Delaware has a substantial interest in

---

[85] The Company observes that the administrative difficulties resulting from court congestion in Delaware lengthens the time to trial here when compared to California, which Gielata does not dispute.  D.I. 17 at 11.  Therefore, this factor weighs in favor of transfer.

[86] D.I. 17 at 11; D.I. 40 at 9.

[87] D.I 40 at 10.

[88] D.I. 17 at 11; D.I. 40 at 10.

[89] D.I. 38 at 19.

adjudicating lawsuits brought against its corporations.[90]

Because both states have an interest in deciding lawsuits brought against its citizenry, the local interest factor is neutral.  As noted previously herein, the mere fact that witnesses and documents are located in California is insufficient to show unavailability in Delaware.  Although a similar class action suit has been filed in California, the Company does not consider the alternative means and resources available to prevent duplicative efforts during the pretrial phase.[91]  Therefore, the practical considerations do not support transfer.[92]

In sum, the Company has neither established that litigating in Delaware poses a unique or unusual burden nor has it shown that the interests of justice require transfer to the Central District of California.  The private and public interest factors do not strongly weigh in favor of transfer.

**ORDER AND RECOMMENDED DISPOSITION**

For the reasons contained herein, I recommend that:

(1) Defendant's motion to transfer to the Central District of California (D.I. 15) be

---

[90] *Id.* (citing *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997)).

[91] The court has recognized that modern technology allows for discovery "at any location convenient to the parties and their employees[;] the only event that will take place in Delaware is the trial."  *Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444-GMS, 2008 WL 2977464, at *3 (D. Del. July 31, 2008).

[92] Notwithstanding that neither party addresses the first filed rule, it is a consideration that weighs against transfer.  The first filed rule states that "in absence of extraordinary circumstances, bad faith, inequitable conduct, or forum shopping, 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'"  *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 09-742-JJF, 2010 WL 256548, at *4 (D. Del. Jan. 20, 2010) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971-72 (3d Cir. 1988)).  The pending suit in the Central District of California was filed on May 21, 2010.  D.I. 39 Ex. J.  The current action was filed on May 6, 2010.  D.I. 1.

DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del.LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.[93]  The objections and response to those objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Non-Pro Se Matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: October 6, 2010                              /s/ Mary Pat Thynge
                                          UNITED STATES MAGISTRATE JUDGE

_____

[93] FED. R. CIV. P. 72(b).