# EXHIBIT A

**SCHEDULE A**

(Directed to [Jones, LaSalle and Solomons])

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

## DEFINITIONS AND INSTRUCTIONS

1.      "[Jones, LaSalle and Solomons]", "You", or "Your" mean [Jones, LaSalle and Solomons], its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.      "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.      "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.      "E&Y" means "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.      "GHP Horwath" means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

6.      The "Merger Advisors" means Roth Capital Partners, LLC and/or Credit Suisse Securities (USA) LLC (individually or collectively), their predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on behalf of any of them.

7.      "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.      "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

9.      The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

10.     "SEC" means the United States Securities and Exchange Commission.

11.     "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

12.     The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

13.     "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to

include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

14.    "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

15.    "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant

Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

16.    "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

17.    "Metadata" means ESI describing the history, tracking or management of an electronic file.

18.    "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

19.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

20.    The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

21.    In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your

directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

22.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained. All ESI is to be preserved in its native format, complete with all metadata.

23.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

24.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

## DOCUMENTS TO BE PRESERVED

1.     All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.     All documents concerning any investigations of China Water, its operations, or any of its present or former officers or employees.

3.     To the extent not covered by the prior request, all documents concerning any work performed by You (including but not limited to any investigatory, consulting, audit, forensic accounting, financial review, or due diligence services) for or on behalf of Heckmann or

any of the Individual Defendants concerning China Water or any of its present or former officers or employees.

4.      All documents concerning the value of China Water or any of its assets.

5.      All documents constituting, comprising or evidencing communications concerning China Water, including, without limitation:

        a.      All of Your internal communications;

        b.      All communications between or among You and: (1) Heckmann; (2) any of the Individual Defendants; (3) E&Y; (4) GHP Horwath or (5) the Merger Advisors; and

        c.      All documents prepared or reviewed by You to be sent to third parties.

6.      All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

7.      All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

8.      All documents concerning the Delaware Litigations.

9.      All documents concerning Xu Hong Bin.

10.      All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT B

## SCHEDULE A
(Directed to Ernst & Young LLP)

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

### DEFINITIONS AND INSTRUCTIONS

1.     "E&Y," "You" or "Your" as used herein mean "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.     "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.     "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.     "GHP Horwath" means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.     The "Merger Advisors" means Roth Capital Partners, LLC and/or Credit Suisse Securities (USA) LLC (individually or collectively), their predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees,

representatives or agents, and any other person or entity acting or purporting to act on behalf of any of them.

6.      "FTI Consulting" means FTI Consulting, Inc., its predecessors, successors, subsidiaries, divisions and affiliates (including but not limited to International Risk, Ltd. or International Risk Mitigation), any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

7.      "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.      "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

9.      The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

10.     "SEC" means the United States Securities and Exchange Commission.

11.     "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

12.     The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

13.    "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

14.    "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

15.    "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

16.    "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

17.    "Metadata" means ESI describing the history, tracking or management of an electronic file.

18.    "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

19.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

20.    The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

21.     In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

22.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained.  All ESI is to be preserved in its native format, complete with all metadata.

23.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

24.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

## DOCUMENTS TO BE PRESERVED

1.      All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.      All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and China Water.

3.    All documents concerning any audits or reviews of the financial statements of Heckmann or China Water, including any working papers, audit evidence and notes.

4.    All documents concerning any due diligence performed by You or any other entity or person concerning or in connection with the Merger, China Water or the Proxy.

5.    All documents concerning any work performed by You concerning or in connection with the Merger, including but not limited to any audit, financial review, consulting, investigatory or due diligence services undertaken or provided by You related to the Merger.

6.    All documents concerning any origination fee, referral fee, commission, bonus, or other income, compensation or tangible or intangible benefit provided to any person with respect to or in recognition of the person's role in establishing or maintaining any relationship between You and Heckmann or China Water, including, without limitation, all work You performed in connection with the Merger.

7.    All diaries, notebooks, notes, date books, calendars, appointment books, telephone logs, or similar documents maintained for or by any of Your (current or former) employees or agents who worked on any engagement concerning the Merger, China Water or Heckmann.

8.    All documents You received from or furnished to any of the following persons or entities concerning the Merger, China Water or the Proxy:

    a.    Heckmann;

    b.    China Water;

    c.    Any of the Individual Defendants;

    d.    GHP Horwath;

    e.    Madsen;

   f.  FTI Consulting;

   g.  The SEC; or

   h.  The Merger Advisors

  9.  All documents constituting, comprising or evidencing communications concerning the Merger, China Water or the Proxy, including, without limitation:

   a.  All of Your internal communications;

   b.  All communications between You and any of the entities or persons listed in subsections (a)-(h) of the preceding request; and

   c.  All documents prepared or reviewed by You to be sent to third parties.

  10.  All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

  11.  All documents concerning any efforts by You or any other person or entity to reconcile China Water's reported sales with any tax liabilities or payments (VAT or otherwise).

  12.  All drafts of the Proxy, including any notes relating thereto.

  13.  All documents concerning the purchase accounting for the Merger, including but not limited to any adjustments made or required to be made thereto.

  14.  All documents concerning any material weakness in internal control over the financial statements and financial reporting at China Water or Heckmann.

  15.  All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

16.     All documents concerning the correction, or obligation to correct, any error(s) or misstatement(s), whether through formal restatement or otherwise, in the financial statements of China Water or Heckmann.

17.     All documents concerning China Water's or Heckman's acquisition of Harbin Taoda.

18.     All documents concerning the Delaware Litigations.

19.     All documents concerning Xu Hong Bin.

20.     All documents concerning Your dismissal or resignation as Heckmann's independent registered public accounting firm and/or Your replacement by GHP Horwath.

21.     All documents concerning the dismissal or resignation of Madsen as China Water's independent registered public accounting firm and/or China Water's replacement of Madsen with GHP Horwath.

22.     All documents concerning all communications, meetings or negotiations attended by You concerning the Merger, China Water or the Proxy.

23.     All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT C

**SCHEDULE A**
(Directed to GHP Horwath P.C.)

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

**DEFINITIONS AND INSTRUCTIONS**

1.     "GHP Horwath," "You" or "Your" as used herein mean means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.     "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.     "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.     "E&Y" means "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.     The "Merger Advisors" means Roth Capital Partners, LLC and/or Credit Suisse Securities (USA) LLC (individually or collectively), their predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees,

representatives or agents, and any other person or entity acting or purporting to act on behalf of any of them.

6.    "FTI Consulting" means FTI Consulting, Inc., its predecessors, successors, subsidiaries, divisions and affiliates (including but not limited to International Risk, Ltd. or International Risk Mitigation), any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

7.    "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.    "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

9.    The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

10.    "SEC" means the United States Securities and Exchange Commission.

11.    "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

12.    The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

13.     "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

14.     "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

15.     "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

16.     "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

17.     "Metadata" means ESI describing the history, tracking or management of an electronic file.

18.     "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

19.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

20.     The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

21.     In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

22.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained.  All ESI is to be preserved in its native format, complete with all metadata.

23.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

24.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

## DOCUMENTS TO BE PRESERVED

1.      All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.      All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and China Water.

3.      All documents concerning any audits or reviews of the financial statements of Heckmann or China Water, including any working papers, audit evidence and notes.

4.      All documents concerning any due diligence performed by You or any other entity or person concerning or in connection with the Merger, China Water or the Proxy.

5.      All documents concerning any work performed by You concerning or in connection with the Merger, including but not limited to any audit, financial review, consulting, investigatory or due diligence services undertaken or provided by You related to the Merger.

6.      All documents concerning any origination fee, referral fee, commission, bonus, or other income, compensation or tangible or intangible benefit provided to any person with respect to or in recognition of the person's role in establishing or maintaining any relationship between You and Heckmann or China Water, including, without limitation, all work You performed in connection with the Merger.

7.      All diaries, notebooks, notes, date books, calendars, appointment books, telephone logs, or similar documents maintained for or by any of Your (current or former) employees or agents who worked on any engagement concerning the Merger, China Water or Heckmann.

8.      All documents You received from or furnished to any of the following persons or entities concerning the Merger, China Water or the Proxy:

        a.      Heckmann;

        b.      China Water;

        c.      Any of the Individual Defendants;

        d.      E&Y;

        e.      Madsen;

      f.      FTI Consulting;

      g.     The SEC; or

      h.     The Merger Advisors

9.     All documents constituting, comprising or evidencing communications concerning the Merger, China Water or the Proxy, including, without limitation:

      a.     All of Your internal communications;

      b.     All communications between You and any of the entities or persons listed in subsections (a)-(h) of the preceding request; and

      c.     All documents prepared or reviewed by You to be sent to third parties.

10.    All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

11.    All documents concerning any efforts by You or any other person or entity to reconcile China Water's reported sales with any tax liabilities or payments (VAT or otherwise).

12.    All drafts of the Proxy, including any notes relating thereto.

13.    All documents concerning the purchase accounting for the Merger, including but not limited to any adjustments made or required to be made thereto.

14.    All documents concerning any material weakness in internal control over the financial statements and financial reporting at China Water or Heckmann.

15.    All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

16.     All documents concerning the correction, or obligation to correct, any error(s) or misstatement(s), whether through formal restatement or otherwise, in the financial statements of China Water or Heckmann.

17.     All documents concerning China Water's or Heckman's acquisition of Harbin Taoda.

18.     All documents concerning the Delaware Litigations.

19.     All documents concerning Xu Hong Bin.

20.     All documents concerning the resignation or dismissal of Madsen as China Water's Heckmann's independent registered public accounting firm and/or Your replacement of Madsen as China Water's independent registered public accounting firm.

21.     All documents concerning the resignation or dismissal of E&Y as Heckmann's independent registered public accounting firm and/or Your replacement of E&Y as Heckmann's independent registered public accounting firm.

22.     All documents concerning all communications, meetings or negotiations attended by You concerning the Merger, China Water or the Proxy.

23.     All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT D

**SCHEDULE A**
(Directed to Roth Capital Partners, LLC)

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

**DEFINITIONS AND INSTRUCTIONS**

1.    "Roth", "You", or "Your" mean Roth Capital Partners, LLC, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.    "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.    "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.    "E&Y" means "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.    "GHP Horwath" means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

6.     "Credit Suisse" means Credit Suisse Securities (USA) LLC, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

7.     "FTI Consulting" means FTI Consulting, Inc., its predecessors, successors, subsidiaries, divisions and affiliates (including but not limited to International Risk, Ltd. or International Risk Mitigation), any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.     "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

9.     "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

10.    The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

11.    "SEC" means the United States Securities and Exchange Commission.

12.    "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

13.    The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

14.    "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

15.    "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data

compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

16.     "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

17.     "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

18.     "Metadata" means ESI describing the history, tracking or management of an electronic file.

19.     "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

20.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

21.     The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

22.     In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

23.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained.  All ESI is to be preserved in its native format, complete with all metadata.

24.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

25.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

### DOCUMENTS TO BE PRESERVED

1.     All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.      All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and China Water.

3.      All documents concerning any due diligence performed by You or any other entity or person concerning or in connection with the Merger, China Water or the Proxy.

4.      All documents concerning any work performed by You concerning or in connection with the Merger, including but not limited to any audit, financial review, consulting, investigatory or due diligence services undertaken or provided by You related to the Merger.

5.      All documents concerning the value of China Water or any of its assets.

6.      All documents concerning any analyses, valuations, opinions or presentations concerning or in connection with the Merger or China Water, including but not limited to all documents concerning the value of China Water and its assets.

7.      All documents concerning any projections of future sales, operations or financial results of China Water.

8.      All documents concerning any fee(s) paid to You in connection with any work performed for or on behalf of Heckmann or China Water.

9.      All documents concerning any origination fee, referral fee, commission, bonus, or other income, compensation or tangible or intangible benefit provided to any person with respect to or in recognition of the person's role in establishing or maintaining any relationship between You and Heckmann or China Water, including, without limitation, all work You performed in connection with the Merger.

10.     All diaries, notebooks, notes, date books, calendars, appointment books, telephone logs, or similar documents maintained for or by any of Your (current or former)

employees or agents who worked on any engagement concerning the Merger, China Water or Heckmann.

11.     All documents You received from or furnished to any of the following persons or entities concerning the Merger, China Water or the Proxy:

        a.      Heckmann;

        b.      China Water;

        c.      Any of the Individual Defendants;

        d.      E&Y;

        e.      GHP Horwath;

        f.      Madsen;

        g.      FTI Consulting;

        h.      The SEC; or

        i.      Credit Suisse.

12.     All documents constituting, comprising or evidencing communications concerning the Merger, China Water or the Proxy, including, without limitation:

        a.      All of Your internal communications;

        b.      All communications between You and any of the entities or persons listed in subsections (a)-(i) of the preceding request; and

        c.      All documents prepared or reviewed by You to be sent to third parties.

13.     All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

14.     All documents concerning any efforts by You or any other person or entity to reconcile China Water's reported sales with any tax liabilities or payments (VAT or otherwise).

15.     All drafts of the Proxy, including any notes relating thereto.

16.     All documents concerning the purchase accounting for the Merger, including any adjustments thereto.

17.     All documents concerning any material weakness in internal control over the financial statements and financial reporting at China Water or Heckmann.

18.     All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

19.     All documents concerning the correction, or obligation to correct, any error(s) or misstatement(s), whether through formal restatement or otherwise, in the financial statements of China Water or Heckmann.

20.     All documents concerning China Water's or Heckman's acquisition of Harbin Taoda.

21.     All documents concerning the Delaware Litigations.

22.     All documents concerning Xu Hong Bin.

23.     All documents concerning the resignation or dismissal of Madsen as China Water's Heckmann's independent registered public accounting firm and/or GHP Horwath's replacement of Madsen as China Water's independent registered public accounting firm.

24.     All documents concerning the resignation or dismissal of E&Y as Heckmann's independent registered public accounting firm and/or GHP Horwath's replacement of E&Y as Heckmann's independent registered public accounting firm.

25.     All documents concerning all communications, meetings or negotiations attended by You concerning the Merger, China Water or the Proxy.

26.     Without regard to the relevant time period, all documents concerning any fees, payments or compensation paid or payable to you (including on a contingent basis), in connection with Heckmann's initial public offering, including but not limited to any deferred underwriting discounts and commissions.

27.     All documents concerning any alternatives to the Merger suggested to, discussed with or considered by Heckmann.

28.     All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT E

**SCHEDULE A**

(Directed to Credit Suisse Securities (USA) LLC)

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

**DEFINITIONS AND INSTRUCTIONS**

1.  "Credit Suisse", "You", or "Your" mean Credit Suisse Securities (USA) LLC, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.  "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.  "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.  "E&Y" means "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.  "GHP Horwath" means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

6.    "Roth" means Roth Capital Partners, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

7.    "FTI Consulting" means FTI Consulting, Inc., its predecessors, successors, subsidiaries, divisions and affiliates (including but not limited to International Risk, Ltd. or International Risk Mitigation), any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.    "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

9.    "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

10.    The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

11.    "SEC" means the United States Securities and Exchange Commission.

12.    "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

13.    The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

14.    "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

15.    "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

16.    "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

17.    "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

18.    "Metadata" means ESI describing the history, tracking or management of an electronic file.

19.    "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

20.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

21.    The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

22.     In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

23.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained. All ESI is to be preserved in its native format, complete with all metadata.

24.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

25.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

### DOCUMENTS TO BE PRESERVED

1.     All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.     All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and China Water.

3.     All documents concerning any due diligence performed by You or any other entity or person concerning or in connection with the Merger, China Water or the Proxy.

4.     All documents concerning any work performed by You concerning or in connection with the Merger, including but not limited to any audit, financial review, consulting, investigatory or due diligence services undertaken or provided by You related to the Merger.

5.     All documents concerning the value of China Water or any of its assets.

6.     All documents concerning any analyses, valuations, opinions or presentations concerning or in connection with the Merger or China Water, including but not limited to all documents concerning the value of China Water and its assets.

7.     All documents concerning any projections of future sales, operations or financial results of China Water.

8.     All documents concerning any fee(s) paid to You in connection with any work performed for or on behalf of Heckmann or China Water.

9.     All documents concerning any origination fee, referral fee, commission, bonus, or other income, compensation or tangible or intangible benefit provided to any person with respect to or in recognition of the person's role in establishing or maintaining any relationship between You and Heckmann or China Water, including, without limitation, all work You performed in connection with the Merger.

10.     All diaries, notebooks, notes, date books, calendars, appointment books, telephone logs, or similar documents maintained for or by any of Your (current or former) employees or agents who worked on any engagement concerning the Merger, China Water or Heckmann.

11.   All documents You received from or furnished to any of the following persons or entities concerning the Merger, China Water or the Proxy:

      a.   Heckmann;

      b.   China Water;

      c.   Any of the Individual Defendants;

      d.   E&Y;

      e.   GHP Horwath;

      f.   Madsen;

      g.   FTI Consulting;

      h.   The SEC; or

      i.   Roth.

12.   All documents constituting, comprising or evidencing communications concerning the Merger, China Water or the Proxy, including, without limitation:

      a.   All of Your internal communications;

      b.   All communications between You and any of the entities or persons listed in subsections (a)-(i) of the preceding request; and

      c.   All documents prepared or reviewed by You to be sent to third parties.

13.   All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

14.   All documents concerning any efforts by You or any other person or entity to reconcile China Water's reported sales with any tax liabilities or payments (VAT or otherwise).

15.   All drafts of the Proxy, including any notes relating thereto.

16.     All documents concerning the purchase accounting for the Merger, including any adjustments thereto.

17.     All documents concerning any material weakness in internal control over the financial statements and financial reporting at China Water or Heckmann.

18.     All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

19.     All documents concerning the correction, or obligation to correct, any error(s) or misstatement(s), whether through formal restatement or otherwise, in the financial statements of China Water or Heckmann.

20.     All documents concerning China Water's or Heckman's acquisition of Harbin Taoda.

21.     All documents concerning the Delaware Litigations.

22.     All documents concerning Xu Hong Bin.

23.     All documents concerning the resignation or dismissal of Madsen as China Water's Heckmann's independent registered public accounting firm and/or GHP Horwath's replacement of Madsen as China Water's independent registered public accounting firm.

24.     All documents concerning the resignation or dismissal of E&Y as Heckmann's independent registered public accounting firm and/or GHP Horwath's replacement of E&Y as Heckmann's independent registered public accounting firm.

25.     All documents concerning all communications, meetings or negotiations attended by You concerning the Merger, China Water or the Proxy.

26.     Without regard to the relevant time period, all documents concerning any fees, payments or compensation paid or payable to you (including on a contingent basis), in connection with Heckmann's initial public offering, including but not limited to any deferred underwriting discounts and commissions.

27.     All documents concerning any alternatives to the Merger suggested to, discussed with or considered by Heckmann.

28.     All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT F

**SCHEDULE A**
(Directed to FTI Consulting, Inc.)

The following definitions and instructions apply to each of the requests set forth herein and are deemed to be incorporated in each of said requests:

### DEFINITIONS AND INSTRUCTIONS

1.     "FTI Consulting", "You", or "Your" mean FTI Consulting, Inc., its predecessors, successors, subsidiaries, divisions and affiliates (including but not limited to International Risk Limited, International Risk, Ltd. or International Risk Mitigation), any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

2.     "Heckmann" or the "Company" means Heckmann Corporation, its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

3.     "China Water" means China Water and Drinks, Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

4.     "E&Y" means "Ernst & Young LLP," its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

5.     "GHP Horwath" means GHP Horwath P.C., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners,

employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

6.     The "Merger Advisors" means Roth Capital Partners, LLC and/or Credit Suisse Securities (USA) LLC (individually or collectively), their predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on behalf of any of them.

7.     "Madsen" means Madsen & Associates CPA Inc., its predecessors, successors, subsidiaries, divisions and affiliates, any present or former officers, directors, partners, employees, representatives or agents, and any other person or entity acting or purporting to act on its behalf.

8.     "Individual Defendants" means, Richard J. Heckmann, Lou L. Holtz, James Danforth Quayle, Alfred E. Osborne, Jr., Donald G. Ezzell and Xu Hong Bin, individually or collectively, and shall include any of their representatives, agents, and any other person or entity acting or purporting to act on behalf of any of them.

9.     The "Merger" means the transaction by which Heckmann acquired all of the outstanding shares of common stock of China Water on or about October 30, 2008.

10.     "SEC" means the United States Securities and Exchange Commission.

11.     "Proxy" means the joint proxy and information statement/prospectus filed by Heckmann and China Water with the SEC in connection with the Merger and any drafts thereof.

12.     The "Delaware Litigation" refers to either or both of the following actions filed in the Delaware Court of Chancery: *Xu Hong Bin v. Heckmann Corporation*, C.A. No. 4802-CC; *Ng Kau v. Heckmann Corporation*, C.A. No. 5524-CC.

13.   "Concerning" means containing, constituting, showing or relating or referring to in any way, directly or indirectly, and when used with reference to documents is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each document request.

14.   "Document" is used in the broadest possible sense and means, without limitation, any object (including but not limited to any paper, film, videotape, electronically stored information, computer storage media, computer file, or any other print, graphic or data medium) in or on which any information or any representation of any information is contained, stored, recorded or embodied. "Information" includes, but is not limited to text, numbers and images. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, e-mails, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

15.     "Electronically stored information" or "ESI" includes, without limitation, the following: (a) any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program), Bloomberg Instant Messenger or e-mail or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (b) any and all items stored on Electronic Media (defined below).

16.     "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types microfiche, or any other vehicle for digital data storage and/or transmittal.

17.     "Metadata" means ESI describing the history, tracking or management of an electronic file.

18.     "Communicate" or "communication" mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopier, mail, e-mail, personal delivery or otherwise.

19.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a particular request all responses that might otherwise be construed to be outside of its scope.

20.     The singular includes the plural, and vice versa. The masculine includes the feminine and neuter genders.

21.     In preserving documents and other materials, you are requested to preserve all documents, including ESI, or things, including Electronic Media, in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, partners, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, employees, representatives or investigators.

22.     Pursuant to Federal Rule of Civil Procedure 34(b), documents shall be preserved as they are kept in the usual course of business so that, if and when the documents are produced, the files in which they were located, their relative order in such files and how such files were maintained may be ascertained.  All ESI is to be preserved in its native format, complete with all metadata.

23.     Unless otherwise stated in a particular request, the relevant time period of these requests shall be from January 1, 2008, through the date of production, and shall include all documents which relate or refer to such period even though prepared, published, sent or received, in whole or in part, prior or subsequent to that period.

24.     This request is continuing and all responsive documents coming into your possession, custody or control shall be preserved.

### DOCUMENTS TO BE PRESERVED

1.     All documents constituting or concerning any agreements, contracts, understandings, engagements, retention or other relationships between You and Heckmann.

2.     All documents concerning any investigations of China Water, its operations, or any of its present or former officers or employees.

3. To the extent not covered by the prior request, all documents concerning any work performed by You (including but not limited to any investigatory, consulting, audit, forensic accounting, financial review, or due diligence services) for or on behalf of Heckmann or any of the Individual Defendants concerning China Water or any of its present or former officers or employees.

4. All documents concerning the value of China Water or any of its assets.

5. All documents constituting, comprising or evidencing communications concerning China Water, including, without limitation:

      a. All of Your internal communications;

      b. All communications between or among You and: (1) Heckmann; (2) any of the Individual Defendants; (3) E&Y; (4) GHP Horwath or (5) the Merger Advisors; and

      c. All documents prepared or reviewed by You to be sent to third parties.

6. All documents concerning value added tax ("VAT") paid or owed by China Water to the Chinese government or any taxation authority.

7. All documents concerning any alleged or actual fraud committed by any present or former officer of China Water or Heckmann, and all documents concerning any alleged or actual falsification of China Water's results of operations or financial statements.

8. All documents concerning the Delaware Litigations.

9. All documents concerning Xu Hong Bin.

10. All documents concerning Your policies, procedures, or practices relating to the preservation or destruction of documents or types of documents sought herein.

# EXHIBIT G

ROSENTHAL, MONHAIT & GODDESS, P. A.
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN
P. BRADFORD DELEEUW

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567

October 15, 2010

**VIA E-MAIL**

Robert W. Brownlie
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297

Re:   **In re: Heckmann Corporation Securities Litigation**
      **Case No. 10-cv-378 LPS-MPT**

Dear Robert:

We intend to request the Court's permission to serve document preservation subpoenas upon the following non-parties that are likely to possess documents relevant to the claims and defenses in this action but that are not subject to 15 U.S.C. 78u-4(b)(3)(C)(i) and may not otherwise be required to preserve such documents:

(1) Ernst & Young LLP
(2) GHP Horwath P.C.
(3) Roth Capital Partners, LLC
(4) Credit Suisse Securities (USA) LLC
(5) FTI Consulting, Inc.

Additionally, there is one other non-party which we have reason to believe possesses relevant information which should be preserved: a firm referenced during Heckmann Corporation's March 16, 2009 earnings conference call as "Jones, LaSalle and Solomons", and described as "a third-party evaluation firm, [hired] to evaluate the assets acquired and the liabilities assumed [in the China Water Merger]." In light of this firm's possession of relevant documents, we also intend to ask the Court to permit us to propound a single interrogatory to ascertain its name and address, so that we may serve a preservation subpoena upon it.

However, in light of the routine nature of our request (*i.e.*, we are not seeking to obtain documents at this time and merely want to ensure the preservation of

Robert W. Brownlie
October 15, 2010
Page 2

relevant evidence, consistent with 15 U.S.C. 78u-4(b)(3)(B)), please let us know if Heckmann will agree to stipulate to the service of the subpoenas and voluntarily provide us with contact information for the third-party evaluation firm referred to as "Jones, LaSalle and Solomons". To facilitate your consideration of our request, I have attached the preservation schedules (setting forth the documents sought to be preserved), as well as a proposed stipulation and order.

I ask that you let me know Heckmann's position regarding the subpoenas by next Wednesday, October 20, 2010, so that we can plan accordingly.

Sincerely,

P. Bradford deLeeuw

Enclosures

cc:    Sharan Nirmul, Esquire (By e-mail)

# EXHIBIT H

**From:** Brownlie, Robert [mailto:Robert.Brownlie@dlapiper.com]
**Sent:** Tuesday, October 26, 2010 12:45 PM
**To:** Brad Deleeuw; Jackson, Veronica
**Cc:** Sharan Nirmul; Grivner, Geoffrey G.; Dreisbach, Daniel
**Subject:** RE: In re Heckmann Corporation Securities Litigation

Dear Brad:

I write in response to your request that Heckmann Corporation agree to allow plaintiffs to serve third party subpoenas notwithstanding the automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 and that discovery is not yet permitted under the Federal Rules of Civil Procedure. After due consideration, Heckmann Corporation cannot agree to your request.

We understand that plaintiff is seeking to serve the subpoenas in order request that the subpoenaed parties "preserve documents." This can easily be accomplished by a letter to those parties putting them on notice that once discovery is permitted, plaintiffs will seek documents from them and asking them to preserve the documents. Accompanying such a letter with a subpoena will not add to such a request, but only create a risk of confusion and inadvertent production. Because of this risk, Heckmann Corporation cannot agree to allow plaintiffs to circumvent the PSLRA discovery stay and the FRCP's restrictions on discovery.

Sincerely,



**Robert W. Brownlie**
San Diego Managing Partner and
Global Securities Litigation Group Co-Chair

**DLA PIPER**

**DLA Piper LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101

619.699.3665 T
619.764.6665 F
619.987.4665 M
robert.brownlie@dlapiper.com

www.dlapiper.com | MyBio

---

**From:** Brad Deleeuw [mailto:bdeleeuw@rmgglaw.com]
**Sent:** Friday, October 15, 2010 2:54 PM
**To:** Brownlie, Robert; Jackson, Veronica
**Cc:** Sharan Nirmul
**Subject:** In re Heckmann Corporation Securities Litigation

Robert,

Please see the attached letter and related documents.

Regards,

Brad

Brad deLeeuw
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19801
Phone: (302) 656-4433
Facsimile: (302) 658-7567

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

# EXHIBIT I

Morningstar® Document Research[SM]

# FORM 424B3

## Heckmann CORP - HEK

**Filed: October 02, 2008 (period: )**

Prospectus filed pursuant to Rule 424(b)(3)

Table of Contents
directors, in valuing China Water and approving this transaction, determined based on the information provided or developed during the due diligence process that they had sufficient information and expertise to determine that China Water's fair market value exceeded 80% of Heckmann's net assets and that the merger consideration to be issued in the merger is fair to the Heckmann stockholders. Accordingly, in considering to approve this transaction, the Heckmann stockholders will be relying on the determination made by the Heckmann board of directors.

*Heckmann's financial advisor, Credit Suisse, and China Water's financial advisor, Roth Capital Partners, may have conflicts of interest.*

Credit Suisse served as the lead managing underwriter and Roth Capital Partners as the co-managing underwriter of Heckmann's initial public offering. As part of the terms of their engagement in that transaction, and in connection with Heckmann's formation as a special purpose acquisition company, the underwriters agreed to defer their receipt of, and deposit in the trust account, underwriting commissions and discounts in the amount of 4.5% of the gross proceeds of the offering, or $20.7 million, until such time as Heckmann completes an initial qualifying business combination and following the payment of amounts due to any public stockholders who exercise their conversion rights. In addition, the underwriters agreed to waive their rights to the deferred underwriting discounts and commissions deposited in the trust account in the event Heckmann dissolved prior to the consummation of a qualifying business combination. In respect of the services rendered in this transaction by Credit Suisse and Roth Capital Partners to Heckmann and China Water, respectively, including in conducting due diligence, helping the parties assess China Water's enterprise value, and assisting the parties in structuring and negotiating the transaction, each of Credit Suisse and Roth Capital Partners may have a conflict of interest insofar as their respective efforts to assist Heckmann and China Water in consummating the merger will have the effect, if successful, of causing the release from trust of the deferred underwriting fees and commissions. In addition if Heckmann achieves adjusted net income of $90.0 million for its fiscal year ending December 31, 2009, and pays the contingent consideration due under the conversion agreement, the release agreement, and the management bonus plan, then Roth Capital Partners will receive a contingent investment banking fee of $4.5 million. Also, Credit Suisse and Roth Capital Partners have been retained by Heckmann and China Water, respectively, as investment bankers for the merger and will receive investment banking fees contingent upon the closing of the merger. In considering to approve this transaction, Heckmann stockholders and China Water stockholders will need to consider the respective roles of Credit Suisse and Roth Capital Partners in light of their material interest in the transaction being consummated.

*If Heckmann is deemed to be an investment company, it must meet burdensome compliance requirements and restrictions on its activities may increase the difficulty of completing a business combination.*

Heckmann does not believe that its planned principal activities will subject it to the Investment Company Act of 1940. In this regard, its agreement with the trustee states that proceeds in the trust account will only be invested in "government securities" (as such term is defined in the Investment Company Act of 1940) and one or more money market funds, selected by Heckmann, which invest principally in either short-term securities issued or guaranteed by the United States having a rating in the highest investment category granted thereby by a recognized credit rating agency at the time of acquisition or tax exempt municipal bonds issued by governmental entities located within the United States and otherwise meeting the conditions under Rule 2a-7 promulgated under the Investment Company Act of 1940. This investment restriction is intended to facilitate Heckmann not being considered an investment company under the Investment Company Act of 1940. However, if Heckmann is deemed to be subject to that act, compliance with these additional regulatory burdens would increase its operating expenses and could make a business combination more difficult to complete.

45

# EXHIBIT J

# CHINA WATER & DRINKS INC..

## FORM 10-K/A
(Amended Annual Report)

## Filed 09/30/08 for the Period Ending 12/31/07

| | |
|---|---|
| Telephone | (852)2620-6518 |
| CIK | 0001344133 |
| SIC Code | 2086 - Bottled and Canned Soft Drinks and Carbonated Waters |
| Industry | Beverages (Non-Alcoholic) |
| Sector | Consumer/Non-Cyclical |
| Fiscal Year | 12/31 |

http://access.edgar-online.com
© Copyright 2010, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

Board of Directors and Stockholders China Water and Drinks Inc.

We have audited the consolidated balance sheet of China Water and Drinks Inc. and subsidiaries as of December 31, 2007, and the related consolidated statements of operations and comprehensive income (loss), cash flows and stockholders' equity for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits. We did not audit the financial statements of China Bottles Inc., the Company's unconsolidated equity investee, which investment constitutes approximately 26% of total consolidated assets and income of approximately 5% of total consolidated net loss, respectively. Those statements were audited by other auditors whose report has been furnished to us, and our opinion, insofar as it relates to the amounts included for China Bottles Inc, is based solely on the report of the other auditors.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit and the report of the other auditors provide a reasonable basis for our opinion.

In our opinion, based on our audit and the report of the other auditors, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of China Water and Drinks Inc. and subsidiaries as of December 31, 2007, and the results of their operations and their cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note 16 to the consolidated financial statements, the Company has restated its consolidated financial statements as of and for the year ended December 31, 2007 to reflect the correction of an error in the estimate of fair value of the Company's common stock issued in connection with an acquisition, to reflect the correction of an error in accounting for common stock to be issued in an acquisition and to reflect the correction of an error in accounting for a compensatory arrangement.

/S/ GHP Horwath, P.C.

GHP Horwath, P.C.
Denver, Colorado
April 29, 2008 (September 26, 2008
as to the effects of the restatement
discussed in Note 16)

F-2

# EXHIBIT K

Morningstar® Document Research[SM]

# FORM 8-K

## Heckmann CORP - HEK

**Filed: December 05, 2008 (period: December 01, 2008)**

Report of unscheduled material events or corporate changes.

**Item 4.01. Changes in Registrant's Certifying Accountant.**

The Company consummated its merger with business combination target China Water and Drinks, Inc., ("China Water") on October 30, 2008. GHP Horwath P.C. served as China Water's registered independent public accounting firm prior to the merger and the Company has decided to extend that relationship by engaging GHP Horwath P.C. as the principal accountant for the combined company. Effective December 1, 2008, the Audit Committee of the Company's Board of Directors engaged GHP Horwath P.C. an independent public accounting firm registered with the Public Company Accounting Oversight Board, as our principal auditor. Accordingly, we dismissed Ernst & Young LLP as our independent registered public accounting firm effective December 1, 2008. There are no disagreements or conflicts between Ernst & Young LLP and the Company. Rather, the Company decided to engage GHP Horwath P.C. because of the firm's experience with auditing the financial statements of China Water.

During the period May 29, 2007 (inception) through December 31, 2007, and the subsequent interim period through December 1, 2008 (date of dismissal), there were no disagreements between the Company and Ernst & Young LLP on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of Ernst & Young, LLP would have caused Ernst & Young LLP to make a reference to the subject matter of the disagreements in connection with its report on the Company's consolidated financial statements for any such periods. The report of Ernst & Young LLP regarding our financial statements for the period May 29, 2007 (inception) through December 31, 2007 did not contain an adverse opinion or a disclaimer of opinion, nor was it qualified or modified as to uncertainty, audit scope or accounting principles.

The Company was incorporated May 29, 2007. During the period May 29, 2007 (inception) through December 31, 2007 and the subsequent interim period through December 1, 2008 (date of dismissal), there have been no reportable events as defined in Regulation S-K Item 304(a)(1)(v).

Ernst & Young LLP has furnished the Company with a letter addressed to the Securities and Exchange Commission regarding the above statements, which letter is attached hereto as Exhibit 16.

During the period May 29, 2007 (inception) through December 31, 2007 and the period from the end of the most recently completed fiscal year through December 1, 2008, GHP Horwath, P.C. did not provide the Company with consultation regarding the application of accounting principles to a specified transaction, either completed or proposed, or the type of audit opinion that might be rendered on the Company's financial statements, that was an important factor considered by the Company in reaching a decision as to an accounting, auditing or financial reporting issue.

**Item 9.01(d). Financial Statements and Exhibits.**

| Exhibit Number | Exhibit Description |
|---|---|
| 16 | Letter from Ernst & Young LLP regarding change in certifying accountant.** |

** Attached hereto

Powered by Morningstar® Document Research℠

# EXHIBIT L

## Thomson StreetEvents℠

### HEK - Q4 2008 HECKMANN CORP Earnings Conference Call

Event Date/Time: Mar. 16. 2009 / 4:30PM ET

**THOMSON**

www.streetevents.com

Contact Us



© 2009 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

Mar. 16. 2009 / 4:30PM, HEK - Q4 2008 HECKMANN CORP Earnings Conference Call

After we closed the transition, the accounting systems were found to be inadequate to manage the kind of growth that they dealt with in '08 with 69% growth, and we found significant balance sheet and integration issues in costs. We then decided to settle the escrow.

The reason for that--there are a couple of reasons. One is when we tried to set up the opening balance sheet to be sure that it was as clean as it could possibly be, there were always the issues of the fact that some of these costs and some of these expenses were covered by the escrow and would be recoverable and therefore should not be set up. The problem with that, of course, is what if you lose an argument over the escrow, or what if an arbitrator rules against you? So then that would happen a year or two from now, and then we'd have to come back and either restate or run it through the operating statement at that time, both of which we thought were pretty clumsy.

So what we decided to do was not to wait to fight it out. We've got a very good business, and we wanted to move on, so we decided to settle the escrow. We negotiated the close of the escrow when we were certain that we had uncovered all of the issues.

Now, for those of you that didn't familiarize yourself with the shareholders' agreement, approximately 22 million shares of HEK indemnify our shareholders against a very complete list of undisclosed liabilities and issues. We have now released 3.5 million shares to Xu Hongbin, the CEO, and paid $14 million for 13 million shares in the escrow in settlement against claims against him, which worked out to be about $1.08 a share. We will make a claim this week to recover the balance of the shares from the other guarantors, and I believe we'll recover them.

We obviously are concerned, we're concerned about the issues at the time of the acquisition, and that's why we demanded and got fairly unusual indemnities from the principals. We've always believed we had enough protection to warrant the transaction in case we ran into these weaknesses, and of course, we were right. Xu is retiring from the company with a noncompete clause, and the remaining shares in the indemnity are held by people not involved in the business.

So where are we? In a down market like this, you buy low. We've already bought 10% of our stock at approximately one-third of its cash value per share and at 25% of its market price. We've bought over 6% of the public warrants below $1.00 a share, and we will continue to be aggressive on both fronts as the market allows us to be.

Two, in a soft economy with unemployment rising, you strengthen your management team, adding people who would not be available otherwise in a strong environment. We've added a seasoned executive to the bottling business in China in John Cheng, a new controller at China Water who is skilled in GAAP and Sarbanes-Oxley, a skilled IT manager in Hong Kong to implement our new Oracle system. We've hired Deloitte Touche to manage the transition into our new accounting platform.

And we hired Jones, LaSalle and Solomons, a third-party evaluation firm, to evaluate the assets acquired and the liabilities assumed to give us comfort on the opening balance sheet and the settlement of the escrow. So we not only had our auditors, but we had an independent third party look at every line on the balance sheet, so when we presented it to you today, we knew it was right.

We've also made several new accounting hires to help the transition to our new system. We've talked about that system in the past. We're installing an Oracle system that will help us a lot to become compliant with Sarbanes-Oxley.

You also focus on your core customers and do all you can to support their business in this slow environment so that when the recovery comes, your relationships are even stronger. We announced today that we're building a new plant in Xi'an, China, to support Coca-Cola exclusively. We're expanding now--have expanded Guangzhou and are expanding Nanning to support OEM expansions. We're installing new lines in several factories to exclusively support a new product expansion by Coke. We're in the market, recruiting senior marketing and salespeople to revamp and design our own labeled product and to expand market penetration with our largest distributors. And we are absolutely convinced that this continued attention to our big customers are going to pay off as this market rebounds.



© 2009 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

# EXHIBIT M

EFiled: Jun 26 2009 2:54PM EDT
Transaction ID 25855325
Case No. 4637-CC

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

XU HONG BIN and KOTEX DEVELOPMENT       :
CORP.,                                  :
                                        :
                Plaintiffs,             :
                                        :
        v                               :    Civil Action
                                        :    No. 4637-CC
HECKMANN CORPORATION, RICHARD J.        :
HECKMANN, DONALD G. EZZELL, BRIAN R.    :
ANDERSON, DAN QUAYLE, ALFRRED E.        :
OSBORNE, JR., LOU L. HOLTZ, ANDREW D.   :
SEIDEL, and EDWARD A. BARKETT,          :
                                        :
                Defendants.             :

                        - - -

                        Chancery Court Chambers
                        Court of Chancery Courthouse
                        34 The Circle
                        Georgetown, Delaware
                        Monday, June 8, 2009
                        11:30 a.m.

                        - - -

BEFORE:   HON. WILLIAM B. CHANDLER III, Chancellor.

                        - - -

  TELEPHONIC ORAL ARGUMENT ON PLAINTIFFS' MOTION TO
        EXPEDITE and RULING OF THE COURT

                        - - -

---------------------------------------------------------
                CHANCERY COURT REPORTERS
               New Castle County Courthouse
          500 North King Street - Suite 11400
             Wilmington, Delaware 19801-3768
                    (302) 255-0524

12

1   agreement.  I'm sure that Ken will have plenty of

2   evidence to submit on his side.  But in addition to

3   whether or not it was fraudulently induced and whether

4   or not it was the subject of proper and appropriate

5   authorization, its scope should not be determined in

6   the abstract.  It should be determined in the context

7   of its assertion as a defense to specific claims.

8               I -- I have no doubt that Mr. Xu will

9   assert this release as a defense to our claims, a

10  claim that it absolves him from embezzlement and

11  fraud; but the proper time and place for the assertion

12  of that release in that context is when the claims

13  have been made, which brings us, finally, to the only

14  question that is currently presented to the Court

15  right now, which is the difference between an answer

16  and counterclaim on the 12th of June and an answer and

17  counterclaim, as the rules would have provided, on the

18  22nd of June.

19              Your Honor, we are working very hard

20  on the detailing of these claims, but the factual

21  investigation, which already includes the hiring of a

22  subsidiary of FTI Consulting called International Risk

23  Mitigation to try to investigate what actually

24  happened over in China, and the interviewing of

13

1    witnesses who were formerly intimidated by Mr. Xu.   We

2    are prepared to file our answer and counterclaim on

3    the 22nd.   But to ask us to do so on the 12th is just,

4    particularly when there is nothing else currently

5    pending or filed, is just unreasonable.

6                    And we are prepared to file our answer

7    and counterclaims on the 22nd.   And I agree with Ken

8    that thereafter we should negotiate a schedule for the

9    presentation of evidence on these claims.   We're not

10   interested in delay, either.   And we're happy to move

11   this thing along promptly, but there is no current

12   need for an order of expedited treatment.

13                    THE COURT:   Mr. Allingham, if I can --

14   I'm not sure if I'm interrupting you, but --

15                    MR. ALLINGHAM:   No, no.   I'm done,

16   Your Honor.

17                    THE COURT:   -- if I were to set the

18   schedule more to your liking; that is, that you file

19   your answer and counterclaim, if any, by June 22nd and

20   then you and Mr. Nachbar discuss the schedule going

21   forward from that, what -- what would be the harm or

22   prejudice or objection from your side of -- of that

23   order also prohibiting any cancellation of the shares

24   until this Court resolved the fundamental dispute