# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE HECKMANN CORPORATION | : | |
| SECURITIES LITIGATION | : | |
| | : | C. A. No. 10-378-LPS-MPT |
| | : | |
| | : | **CLASS ACTION** |

## MEMORANDUM OPINION

## PROCEDURAL BACKGROUND

This class action is for alleged violations of the federal securities laws on behalf of all shareholders who held common stock of Heckmann Corporation ("Heckmann") as of September 15, 2008 and were entitled to vote on the Merger between Heckmann and China Water and Drinks Inc. ("Merger") ("China Water").  Xu Hong Bin ("Xu") was Chief Executive Officer and President of China Water from June 2007 until the October 30, 2008 Merger.  Soon after the Merger, Heckmann announced Xu's resignation from the Heckmann Board.  On May 8, 2009, Heckmann disclosed prior management had misrepresented the strength of China Water's business,[1] and cancelled the common stock issued to former China Water management.[2]

Xu filed a complaint against Heckmann in the Court of Chancery for the state of Delaware for cancellation of his shares of Heckmann common stock.  Heckmann

---

[1] D.I. 52 at 117.
[2] *Id.* at 118.

responded with counterclaims against Xu, which alleged he had perpetrated massive

fraud.  In the Chancery action, Xu was represented by Kenneth J. Nachbar, Esq.

("Nachbar") and Israel Dahan ("Dahan") (combined "Chancery counsel")[3] from June 1,

2009 to April 26, 2011 when the matter was dismissed with prejudice.

The initial complaint in the present matter was filed on May 6, 2010.  On August

12, 2010, the court appointed Matthew Haberkorn ("Haberkorn") to serve as lead

plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B).  Each defendant, with the exception of Xu,

has appeared through counsel and participated in extensive motion practice.

## PARTIES' POSITIONS

### Chancery Counsels' Position:

In opposition to Haberkorn's motion for leave to serve process by alternative

means, Nachbar/Dahan assert because they are Xu's former counsel in an action

resolved over six months ago and have had no subsequent communications with him,

the motion should be denied.[4]  Further, as former Chancery counsel, they assert no

knowledge of the current whereabouts of their former client.[5]

Nachbar and Dahan argue under FED.R.CIV.P. 4(f), the availability of alternative

service is within the court's discretion.[6]  Due process concerns under Rule 4(f) are

satisfied while there is regular contact between counsel and the client.[7]  According to

Nachbar and Dahan, Haberkorn's contention that due process concerns are also

---

[3] Kenneth J. Nachbar is a member of the firm of Morris, Nichols, Arsht & Tunnell.  Israel Dahan is a member of the firm of Cadwalader, Wickersham & Taft.
[4] D.I. 94 at 1-2.
[5] *Id.* at 2.
[6] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).
[7] *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

addressed where counsel have not been in contact with a former client is inaccurate, because courts have held Rule 4(f)(3) service is not authorized on a foreign defendant's lawyer where communications have not occurred between the two.[8]   Thus, Haberkorn's motion to compel Xu's former attorneys to locate and accept service of his behalf, despite their lack of contact with him, is unduly burdensome and violates due process.[9]   In their analysis, Chancery counsel distinguish the cases cited by Haberkorn.  In those matters, counsel were either obviously in contact with their clients, or never denied the apparent lines of communication with them, compared to the instant matter where the attorneys deny any recent communication with Xu.[10]   Nachbar and Dahan note a former relationship with counsel fails to meet the regularity of contact and communication required under due process to warrant Rule 4(f) alternative service.[11]   They maintain the facts here are analogous to those in *1st Tech., LLC v. Digital Gaming Solutions, S.A.*,[12] where a motion to serve the defendant's former counsel was denied because of due process considerations.  Since they no longer represent Xu, they can not accept service in the absence of any recent contact with him and their lack of any knowledge regarding his present whereabouts.

**Haberkorn's Position:**

Haberkorn seeks service of process on Xu by alternative means allegedly permitted under Rule 4(f)(3).  Haberkorn has previously attempted service by other

---

[8] *Madu, Edozie & Madu v. Socket Works Ltd Nigeria*, 265 FRD 106, 116 (S.D.N.Y. 2010) (where counsel did not know defendant's location).
[9] D.I. 94 at 5.
[10] *Id.*
[11] *Id.* at 6.
[12] No. 4:08 CV 586, 2009 WL 879463, at *9 (E.D. Mo. Mar. 30, 2009).

available means, including translation of the amended complaint into Mandarin Chinese, and procedures authorized under the Hague Convention.  Haberkorn contacted Nachbar to ascertain whether he would accept service on Xu's behalf.[13]   After receiving no reply, Haberkorn notified Nachbar that service would be issued in accordance with Rule 4(f)(1) at the address indicated in Xu's verification in the Chancery action.[14]  As a result, Haberkorn issued a summons to Xu at the address contained in the Chancery action pursuant to procedures authorized by the Hague Convention, which included translation of the summons and amended complaint into Mandarin Chinese and transmittal of relevant documents to the People's Republic of China Ministry of Justice.[15]  On July 8, 2011, notification was provided that service of process failed because the address was "not sufficient enough" for service.[16]

Thereafter, Haberkorn sent another letter to Nachbar requesting he accept service for Xu.  Subsequently, Nachbar advised neither he nor his firm were authorized to accept service for Xu, and his representation of Xu terminated with the Chancery action.[17]  Haberkorn further notes counsel for the parties in the Chancery action regularly communicated throughout that litigation.  Haberkorn argues he has no other means to serve Xu and seeks the court's relief.

Haberkorn asserts his prior efforts constitute reasonable attempts to effectuate

---

[13] D.I. 90 at 6.
[14] *Id.* at 7.
[15] *Id.* at 8.
[16] *Id.*
[17] *Id.*

4

service on Xu, and therefore, the court's intervention is now necessary.[18]  Haberkorn

maintains Rule 4(f)(3) provides the court broad discretion to permit service by means

not prohibited by international agreement.[19]  Once a plaintiff has shown the court's

intervention is necessary, it may allow for a means of service not prohibited by

international agreement and comports with constitutional due process.[20]  To comply with

due process, the method of service must be calculated, under the circumstances, to

provide notice of the pendency of the action and allow the opportunity to present

objections.[21]  Haberkorn proposes to serve Xu through his former counsel in the

Chancery action.  Haberkorn avers this method of service is not prohibited by any

international agreement and is consistent with due process.[22]  Since the Hague

Convention does not apply to service made on a domestic agent, other international

agreements must be referenced to determine whether such process is appropriate.[23]

Haberkorn relies on *Knit With*[24] and *Prediction*[25] to support no international agreement

prohibits this type of service.

Haberkorn further contends numerous courts have recognized service of process

upon a defendant's attorney as comporting with due process when the defendant has

---

[18] *See Knit With v. Knitting Fever, Inc.,*No. 08-4221, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010).  *See also Marlabs Inc. v. Jakher*, C.A. No. 07-4074, 2010 WL 1644041, at *3 (D.N.J. April 22, 2010) (finding alternate service under Rule 4(f)(3) necessary where the plaintiff made numerous unsuccessful attempts to serve the defendant in accordance with Hague Convention procedures).

[19] D.I. 90 at 9.

[20] *Knit With*, 2010 WL 4977944 at *4.

[21] *Mullane,* 339 U.S. at 314.

[22] *See id. See also LG Electronics, Inc. v. Asko Appliances, Inc.*, C.A. No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009).

[23] D.I. 90 at 11.

[24] 2010 WL 4977944, at *5.

[25] No. 09 Civ 7459, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010).

maintained contact with counsel.  Haberkorn argues due process does not require an attorney currently represent the client:  it only requires contact between an attorney and client be so regular that notification through counsel would reasonably advise a client about the pending action.[26]  Haberkorn claims although representation of Xu has ended, the contact between Chancery counsel and Xu authorizes service through alternative means.

Haberkorn also asserts a factor in the court's analysis in determining appropriate means for service of process includes the prevention of further delay in the present litigation.[27]

Recently, Haberkorn obtained from Xu's deposition in the Chancery action his email address used by him since his departure from China Water.[28]  Since obtaining this information, Haberkorn seeks to modify his motion to request an order of service on Xu through use of his email address.[29]  Haberkorn contends this method of service is reasonably calculated under the circumstances to reach Xu and comport with due process.[30]  Haberkorn relies on *Prediction*[31] and *Phillip Morris*[32] in support of his position of use of email for effective service arguing such service should be authorized by the

---

[26] D.I. 90 at 12, *citing Rio Props., Inc.*, 284 F.3d at 1017.
[27] *LG Electronics, Inc.*, 2009 WL 1811098, at *4 ("Further, and in the alternative, this Court finds that, pursuant to Rule 4(f)(3), service upon an attorney is warranted in order to prevent further delays in litigation."); *see* Rule 4(f) (3) (a foreign individual may be served in a foreign jurisdiction "by other means not prohibited by international agreement, as the court orders").
[28] D.I. 110 at 2.
[29] *Id.*
[30] *Id.*
[31] 2010 WL 1050307, at *2.
[32] *Phillip Morris USA Inc. v. Veles Ltd.,* No. 06 CV 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007).

court.[33]

**DISCUSSION**

**Standard of Review**

Under Rule 4(f), service of process on any individual not within any judicial

district of the United States may be performed in one of three ways:

(1) by any internationally agreed means of service that is reasonably calculated

to give notice, such as those authorized by the Hague Convention on the Service

Abroad of Judicial and Extrajudicial Documents;

(2) If there is no internationally agreed means, or if an international agreement

allows but does not specify other means, by a method that is reasonably

calculated to give notice:

a. as prescribed by the foreign country's law for service in that country in

an action in its courts of general jurisdiction;

b. as the foreign authority directs in response to a letter rogatory or letter

of request; or

c. unless prohibited by the foreign country's law, by:

i. delivering a copy of the summons and of the complaint to the

individual personally; or

ii. using any form of mail that the clerk addresses and sends to the

individual and that requires a signed receipt; or

---

[33] D.I. 110 at 2

(3) by other means not prohibited by international agreement, as the court

orders.[34]

The plain language of Rule 4(f)(3) provides service of process must be directed

by the court and must not be prohibited by any international agreement.[35]  The court may

require the plaintiff to show that reasonable efforts to serve the defendant have been

made and proven unsuccessful, and the court's intervention is necessary to prevent

more futile attempts at service.[36]  However, it is not necessary that a plaintiff first attempt

every permissible type of service prior to seeking relief from the court under rule 4(f)(3).[37]

No matter what type of service is authorized under rule 4(f)(3), the service must

comply with the notions of due process.  Under the due process clause, the primary

function of service is notification of a legal action in a manner and time to allow a

defendant to respond and present defenses and objections.  Whether to permit

alternative service under Rule 4(f)(3) falls within the court's discretion.  Effective service

under Rule 4(f)(3) requires notice that is reasonably calculated, under the totality of the

circumstances, to inform of the pending the action and allow the opportunity to respond

and object.[38]  Further, Rule 4(f) does not denote any hierarchy or preference of one

method of service over another.[39]  Service under Rule 4(f)(3) is not a last resort or

---

[34]  Fed.R.Civ.P. 4(f)(1)-(3)
[35]  *Rio Props. Inc.,* 284 F.3d at 1014.
[36]  *Id.*
[37]  *Id.* at 1016.  *See also 1st Technology, LLC* at *8
[38]  *Mullane,* 339 U.S. at 314.  *See also FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 533 (E.D. Va. 2005)("Under Rule 4(c)(3) the court has the power to approve any method of service that is reasonably calculated to give notice to [the defendant].").
[39]  *FMAC Loan Receivables*, 228 F.R.D. at 534.

extraordinary relief.[40]

**Use of Rule 4(f)(3) for service upon Xu's Chancery counsel.**

Rule 4(f)(3) does not permit service upon Xu's Chancery counsel because under the circumstances, such service would not be reasonably calculated to contact Xu.  Rule 4(f) due process concerns are satisfied so long as there is regular contact between the attorney and the defendant.[41]  Here, Xu's former counsel deny any knowledge of his present whereabouts, and further refute any contact with him since their representation concluded.[42]

The present facts are analogous to *1st Technology, LLC v. Digital Gaming Solution.*[43]  For service of process by alternative means under Rule 4(f)(3), the only two requirements are service as directed by the court, which is not prohibited by any international agreement.  No other limitations exist within the rule.[44]

"A court cannot authorize service on a foreign defendant's lawyer unless there has been adequate communication between the two."[45]  In *1st Technology*, the court concluded since four months had passed from when counsel had last represented the defendant, and there was no indication the lawyers maintained any contact with their former clients thereafter or were aware of their current location, serving the defendants

---

[40] *Id.*

[41] *Rio Props. Inc.,* 284 F.3d at 1017.

[42] D.I. 94 at 6.

[43] 2009 WL 879463, at *2-3. (where the plaintiff's attempt to serve the defendants in Costa Rica was unsuccessful.  A motion for alternative service on their US lawyers and via e-mail was granted.  The US lawyers claimed they no longer represented the defendants and were unable and unwilling to accept service on their behalf. The US lawyers ceased representing the defendants more than four months prior to the attempted service.)

[44] *Rio Props. Inc.,* 284 F.3d at 1014.

[45] *1stTechnology,* 2009 WL 879463, at *9.

9

former counsel would not be reasonably calculated to appraise of the lawsuit and allow

the defendants to present objections or otherwise respond.[46]  In applying the analysis

under *1st Technology* to the present matter, Nachbar and Dahan can not be served on

Xu's behalf.  There is no indication they know of his recent location, or have had contact

with him since the conclusion of their representation in April 2011.  Such circumstances

fail to support service on counsel as notifying Xu of the present action against him.[47]

The present facts and those of *1ˢᵗ Techology* are distinguishable from *Knit With*.

In *Knit With*, the defendants had recent and regular contact with their attorney, and they

had actual notice of the action.[48]  Here, Chancery counsel have had no contact with Xu

since the termination of their representation.  Therefore, the analysis in *Knit With* does

not apply, and service upon domestic counsel is not warranted under Rule 4(f)(3).

**Use of service on Xu via email.**

The same analysis and Rule applies to authorizing service via email.  So long as

the method of service is reasonably calculated to reach the defendant and allow the

opportunity to object and respond to the litigation, service through email comports with

the due process clause.[49]  Rule 4(f)(3) was adopted to provide flexibility to the federal

courts in dealing with questions of alternative method of service of process.[50]  For

---

[46] *Id.*  The court in *1st Technology* noted unless the defendant has been in constant communication, or in contact with his attorney regarding the legal proceedings at hand, such alternative service would likely be ineffective and has not been previously authorized.

[47] *See also Prediction Co.*, 2010 WL 1050307, at *2. (stating since the attorney and client have had recent contact, strongly indicates counsel would be successful in forwarding the summons and complaint to the defendant, and therefore, alternate service through former counsel was approved.);  *LG Electronics, Inc. v. Asko Appliances*,C.A. 08-848, 2009 WL 1811098, at *4. (noting recent regular contact between the defendant and his lawyer clearly demonstrates the defendant is on notice of the complaint.)

[48] *Knit With*, 2010 WL 4977944, at *3.

[49] *Mullane* at 314.

[50] *In Re Int'l Telemedia Assoc. Inc.,* 245 B.R. 713, 721(Bkrtcy.N.D.Ga. 2000).

effective and authorized service on Xu through email, the evidence must show it will reasonably notify him of pendency of this action.  Here, no evidence has been presented that Xu can not be reached at the email address since he disclosed that information at his previous deposition.[51]

The courts have not definitively spoken as to whether email is allowed as an alternative method of service; however, no court has stated such service is impermissible under the FED R. CIV. P.[52]

> [C]ommunication by facsimile transmission and electronic mail have now become a commonplace in our increasingly global society. The federal courts are not required to turn a blind eye to society's embracement of such technological advances.  When an email address is the only available means of communication with a defendant there is no logical or legal reason not to use it.[53]

In *In re International Telemedia*, the defendant's preferred means of communication was through email or facsimile and volunteered such contact information.[54]  As a result, the court found service through those methods was reasonable to provide real notice of the pending action.[55]  Here, in his deposition in the Chancery matter, Xu represented that his email address is one he has used since his involuntary departure from China Water.[56]  Since Chancery matter only ended within the past seven months, it can therefore be concluded that service through email is

---

[51] D.I. 110 at 2.

[52] *In re Int'l Telemedia Assoc., Inc.*, 245 B.R. at 721 (stating no court has rejected service of process via electronic mail on its face).

[53] *Id.* at 722 (wherein the defendant had concealed his location and evaded service. The court determined a defendant should not be able to evade service by confining his location to modern technological means and Rule 4(f)(3) was designed to prevent such gamesmanship by a party).

[54] *Id.*

[55] *Id.*

[56] *Id.*

reasonably calculated to reach Xu.

Courts have approved email service of process as an appropriate means of service pursuant to Rule 4 under the proper circumstances.[57]   In *Phillip Morris USA, Inc.*, the plaintiff was unsuccessful in serving the defendants through internationally approved means.[58]   The plaintiff, however, demonstrated the defendants likely were reachable through email because it was the manner in which the defendants regularly conducted business.   Under those circumstances, the defendants probably would receive notice of the action through service by email.[59]   Here, there is no evidence that Xu will not be reached at the email address provided during the pendency of his Chancery action.[60]

"When faced with an international business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."[61]   In *Rio Props. Inc.*, email was the only means reasonably calculated to appraise the defendant of the lawsuit.[62]   There, the court held due process required "nothing more."[63]   "[W]hen an email address is the only available means of communication with a defendant, there is no logical or legal reason not to use it."[64]   Therefore, since service on Xu via email is reasonably calculated to reach him, it is not inconsistent with due process, and is an acceptable means of service.

---

[57] *Phillip Morris USA Inc. v. Veles Ltd.*, 06 CV 2988(GBD), 2007 WL 725412, at *3.

[58] *Id.*

[59] *Id.   See also Prediction Co. LLC*, 2010 WL 1050307, at *2 (finding it was reasonably likely the defendant would receive the summons and complaint at his most recently used email address, and therefore service through email was appropriate).

[60] D.I. 110 at 2.

[61] *Rio Props. Inc.*, 284 F.3d at 1014.

[62] *Id.*

[63] *Id.* at 1015.

[64] *In re Int'l Telemedia Assoc., Inc.*, 245 B.R. at 722 (internal citations omitted).

**Compelling Chancery counsel to disclose Xu's last known contact information.**

The court can compel chancery counsel to surrender Xu's contact information because it is not subject to the attorney-client privilege.  The declarations by Nachbar and Dahan fail to assert that they do not have any contact information for Xu.[65]  During representation in the Chancery litigation, and more recently, payment of their fees, Nachbar and Dahan likely have contact information for Xu, which can be used by Haberkorn for service of process.

The attorney-client privilege protects only disclosures that are necessary to obtain informed legal advice, and that would not have been made without the protection of the privilege.[66]  "Attorneys may be questioned as to their clients' whereabouts and whether they have had contact with them."[67]  Such information is exactly what Haberkorn seeks from Xu's Chancery counsel.

Where clients' contact information may be covered by the privilege is the exception.  Those cases involve when the client disclosed his address for the specific purpose of obtaining legal advice, and the address itself was at the heart of the advice sought.[68]  In *Litton Industries*, the plaintiffs sought to depose an attorney for the sole purpose of ascertaining his client's whereabouts.[69]  The court held the attorney-client

---

[65] D.I. 94 at 11-14 (The attorneys declare their representation of Xu ceased with the termination of the Chancery action.  Further, they assert no direct communications with Xu during their representation, and no communications with him since the conclusion of the Chancery litigation.)

[66] *Matter of Walsh,* 623 F.2d 489, 494 (7th Cir. 1980).

[67] *Id.*  "The privilege is improperly invoked, as a general rule, to protect a client's identity, or components thereof, i.e. fact of employment, compensation, address." *Burden v. Church of Scientology of California,* 526 F.Supp. 44, 45 (1981) (holding that asking an attorney his client's identity, address and compensation at deposition was proper and not protected by the attorney-client privilege).

[68] *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 130 F.R.D. 25, 26 (1990).

[69] *Id.*

13

privilege did not protect the whereabouts of the client because the privilege does not protect all communications between an attorney and his client.[70] Here, similar to *Litton Industries*, the information identifying the client is unprotected by the attorney-client privilege because there is no evidence that any location information was communicated in confidence, or related to the legal advice sought.  Thus, this court may compel the Chancery counsel to disclose all last known contact information for Xu.

THEREFORE, IT IS ORDERED that:

1.  Haberkorn's motion for leave to serve process by alternative means (D.I. 89) under FED.R.CIV.P 4(f)(3)is granted in part and denied in part.  Consistent with this memorandum order, Haberkorn may attempt service of Xu through email and at the contact information provided by his former counsel.

2.  IT IS FURTHER ORDERED that former Chancery counsel shall provide on or before December 12, 2011 to Haberkorn's counsel their last known contact information regarding Xu, including but not limited to address(es), email address(es) and facsimile contact(s).

Date: November 22, 2011                     /s/ Mary Pat Thynge
                                            UNITED STATES MAGISTRATE JUDGE

---

[70] *Id.*

14