IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: HECKMANN CORPORATION    :
SECURITIES LITIGATION          :    C.A. No. 10-378-LPS-MPT

## MEMORANDUM ORDER

WHEREAS, Magistrate Judge Mary Pat Thynge issued a Report and Recommendation (D.I. 84; D.I. 105) ("Report"), dated June 16, 2011, recommending that the Court deny the motion to dismiss (D.I. 63) filed by Defendants Richard J. Heckmann, James Danforth Quayle, Alfred E. Osborne, Jr., Lou L. Holtz, and Donald G. Ezzell (collectively, "Individual Defendants"), as well as the motion to dismiss (D.I. 69) filed by Defendants Heckmann Corporation ("Heckmann") and China Water and Drinks, Inc. ("China Water") (collectively, "Corporate Defendants" and, together with Individual Defendants, hereinafter "Defendants");

WHEREAS, Defendants filed timely objections to the Report on July 5, 2011 (D.I. 85) ("Objections");

WHEREAS, Lead Plaintiff Matthew Haberkorn ("Plaintiff") responded to the Objections on July 19, 2011 (D.I. 87);

WHEREAS, the Court heard oral argument on the Objections on October 25, 2011 (*see* Hr'g Tr. Oct. 25, 2011 (D.I. 111) (hereinafter "Tr."));

WHEREAS, the Court has considered the motions *de novo*, as they present case-dispositive issues, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see generally Tagayun v. Lever & Stolzenberg*, 239 Fed. App'x 708 (3d Cir. Mar. 15, 2007);

1

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. The Objections are OVERRULED.

2. Magistrate Judge Thynge's Report (D.I. 84; D.I. 105) is ADOPTED.

3. The motions to dismiss (D.I. 63, 69) are DENIED.

4. Defendants present six issues in their Objections. None warrants granting their motions to dismiss.

    a. Defendants object that the Report erred in applying a "nationwide contacts" analysis in assessing whether personal jurisdiction exists over the Individual Defendants. The Report does apply a "nationwide contacts" analysis. (*See* Report at 14-18; *see also* 15 U.S.C. § 78aa (2010)) This was not error. As the Report and Plaintiff point out, no decision of the Third Circuit Court of Appeals precludes reliance on nationwide service of process even with respect to domestic defendants. (*See* Report at 16; *see also* D.I. 87 at 4 (observing Defendants "failed to cite *even a single federal securities case* in which a domestic defendant was dismissed for lack of minimum contacts with the jurisdiction")) To the contrary, at least one unpublished opinion of the Third Circuit does apply the national contacts test to a domestic defendant in a federal securities action. *See Gambone v. Lite-Rock Drywall Corp.*, 124 Fed. App'x 78, 80 & n.2 (3d Cir. Jan. 5, 2005). Additionally, a recent decision by the Honorable Sue L. Robinson of this Court explains why reliance on Section 27 of the Securities Exchange Act of 1934 is proper and consistent with the Due Process Clause of the United States Constitution. *See Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 694, 700 (D. Del. 2010) (applying national service of process provision of Securities Exchange Act, 15 U.S.C. § 78aa, to Bonsall, a Michigan citizen and resident, who also lived and worked in

2

Germany).

Defendants' reliance on *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 337 (D. Del. 2007), *aff'd*, 602 F.3d 237 (3d Cir. 2010), in which Judge Robinson stated, "the Third Circuit has never applied a 'national contacts' test for establishing personal jurisdiction over a domestic **antitrust** defendant" (emphasis added), is unavailing. *Howard Hess* involved an antitrust action. When, subsequently, Judge Robinson was confronted with a securities action in *Snowstorm*, she expressly relied on "national contacts."[1]

        b.        Defendants object that the Report's finding of personal jurisdiction over the Individual Defendants violates Due Process. The Court has already explained, in connection with Defendants' first objection, why this is not the case. "Due process concerns under the Fifth Amendment are satisfied if a federal statute provides for nationwide service of process in federal court for federal question cases." *Snowstorm*, 739 F. Supp. 2d at 700. As the Report observed (at p. 17), "whether defendants had minimum contacts with the United States . . . is undisputed by both sides." It follows that the Individual Defendants have failed to meet their burden of showing that it would be constitutionally unfair for them to be subject to suit in Delaware. (*See* Tr. at 25-27; *see also In re Heckmann Corp. Sec. Litig.*, 2011 WL 1219230, at *1 n.1 (Mar. 31, 2011) (adopting recommendation to deny defendants' motion to transfer, noting Judge Thynge's finding that Heckmann Corporation has not "established that litigating in Delaware poses a unique or unusual burden").[2]

---

    [1] In affirming *Hess*, the Third Circuit did not address the District Court's rulings on jurisdiction and venue. *See* 602 F.3d at 245 n.2.

    [2] The Court agrees with the Individual Defendants that it would be error to "conclude[] that because the *Company* filed a counterclaim in state court litigation, the *Individual Defendants*

3

        c.        Defendants object that the Report erred in relying on the group pleading doctrine to find Plaintiff sufficiently alleged a Section 14(a) claim. But the Report did not rely on the group pleading doctrine (*see* Report at 21-22), which is "a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007). Instead, as Plaintiff argues, "no such judicial presumption is necessary in this matter because Section 14(a) ***expressly attributes*** each of the alleged misstatements and omissions to the Individual Defendants." (D.I. 87 at 6) The Complaint alleges that all of the Individual Defendants agreed to the October 30, 2008 Merger and the October 2, 2008 Joint Proxy soliciting stockholder support for the Merger. (*See, e.g.*, D.I. 52 at ¶¶ 1, 10, 39, 102, 172-74)

        d.        Defendants object that the Report erred in ignoring the pleading standard required to state a claim for violation of Section 14(a). According to the Individual Defendants, "Plaintiff has wholly failed to make any allegations showing the involvement of Ezzell, Osborne, Quayle, and Holtz and, therefore, the Section 14(a) claim fails as to each of them." (D.I. 85 at 9) For the reasons explained in the preceding subparagraph 3.c, the Court disagrees. (*See also* D.I. 21 Ex. A at p. 134 (Joint Proxy stating, "[t]he solicitation of proxies from Heckmann stockholders is made on behalf of the Heckmann board of directors"))

The Court further rejects the argument made at the hearing that the Complaint should be

---

are subject to personal jurisdiction." (D.I. 85 at 2) It is not clear to the Court, however, that the Report reached this conclusion. (*See* Report at 17-18 (considering alternative arguments relating to purposeful availment)) In any event, for the reasons stated in this Memorandum Order, the Court concludes that the exercise of personal jurisdiction by this Court does not violate the Due Process rights of the Individual Defendants.

construed as "sound[ing] in fraud" against Individual Defendants Quayle, Holtz, Osborne, and Ezzell, thereby transforming the 14(a) claims against these Individual Defendants into fraud claims (even though these Individual Defendants are not named in the 10(b) claims). (*See* Tr. at 17-18) This is not a fair reading of the 104-page, 328-paragraph Complaint, particularly as Plaintiff insists it is not alleging fraud against these Individual Defendants. (Tr. at 35)

        e.        Defendants object that the Report erred in concluding that the Complaint adequately alleges the scienter element of a Section 10(b) violation. But the Complaint does adequately allege scienter. (*See, e.g.*, D.I. 52 at ¶¶ 205-12) Additionally, the Report demonstrates that, notwithstanding Defendants' assertions to the contrary, Magistrate Judge Thynge did consider evidence of "non-fraudulent" intent. (*See* Report at 26-27) To survive a threshold inspection for sufficiency on a motion to dismiss, an allegation of scienter must – after a comparative evaluation, including consideration of competing non-fraudulent inferences – be "more than merely plausible or reasonable" – indeed, it must instead "be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see also id.* at 324 ("A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."). For the reasons stated in the Report (*see, e.g.*, pp. 25-27), the Complaint satisfies this standard.[3]

        f.        Finally, Defendants object that the Report erred by ignoring settled law

---

[3] Adding the point emphasized by the Individual Defendants at oral argument (*see, e.g.*, Tr. at 4-6) – that fraudulent intent is implausible given the amount of money each had at stake ($50,000 or $100,000) and the maximum upside potential return on their investment ($1.5 to $3 million each) – does not render the inference of scienter less than strong.

precluding Plaintiff from relying solely on declining stock prices to allege loss causation in an overall declining securities market. Defendants contend, "The Report glosses over the fact that the Company's securities prices had already fallen substantially since the merger at issue . . . [and] Plaintiff must allege more than a decline in the Company's stock prices to survive dismissal." (D.I. 85 at 11) Following Defendants' May 8, 2009 corrective disclosures (i.e., reporting a $184 million goodwill impairment on China Water and revealing China Water "misrepresented the strength" of its operations and "may have diverted corporate assets"), the price of Heckmann common shares dropped 13.2% and the price of Heckmann warrants dropped 25.5%. (D.I. 52 at ¶¶ 232, 236-37) The Complaint's allegation that these drops were attributable to the corrective disclosures, and not just to general market forces or as part of a gradual decline in the price of Heckmann securities, must be taken as true in the present procedural posture. The parties' dispute over loss causation cannot be resolved at the pleadings stage. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 187 (3d Cir. 2000) ("While we are mindful that the defendants may disprove that the Class suffered a loss as a result of the alleged misrepresentations by showing that the misrepresentations were not a substantial factor in setting the price of ABI common stock during the Class period, we disagree that the defendants may do so at this stage.").[4]

5.     The Motion for Judicial Notice (D.I. 72) is GRANTED. This motion is largely unopposed. (*See* D.I. 77 at 40 n.27) Pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of facts that are "not subject to reasonable dispute" in that they are either (1)

---

[4]Defendants do not assert any unique arguments as to the Complaint's Section 20(a) claims. Given that the Court is denying Defendants' efforts to dismiss the 14(a) and 10(b) claims, there is no basis to dismiss the 20(a) claims either.

generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The Court finds these standards are met and has found it helpful to consider the materials submitted by Defendants in connection with resolving their Objections.

May 25, 2012
Wilmington, Delaware

_____
UNITED STATES DISTRICT JUDGE